THE STATE EX REL. R. C. JENNETT V. WM. P. OWENS.

(Case No. 1984.)

1. QUO WARRANTO — JURISDICTION — CONTESTED ELECTION.— The previous decisions of the supreme court of Texas (made under the present constitution), as announced in *Ex parte* Towles, 48 Tex., 413, which held that the district court had no jurisdiction to revise under *quo warranto* the action of the returning officers of an election and place a contestant in office, when a certificate of election had been awarded to his competitor, who had thus obtained possession of the office, proceeded mainly upon the ground that such a proceeding was not a suit, complaint or plea wherein the matter in controversy " is valued at or amounts to $500, exclusive of interest."

2. CASES REVIEWED.— *Ex parte* Towles, 48 Tex., 413; Williamson *v.* Lane, 52 Tex., 335; *Ex parte* Whitlow, 59 Tex., 273, and Gibson *v.* Templeton, 5 Tex. Law Rev., 18, reviewed.

3. POLITICAL QUESTION.— Whether the constituted authorities of a state shall create an office, or provide to have it filled, and how long an incumbent shall hold it, are political questions. If they determine that it shall be filled by election, and prescribe that the candidate receiving the largest number of votes shall hold the office, the courts have no power to declare that these things shall be determined otherwise.

4. ELECTION.— When the will of the people is ascertained by their ballots, at an election provided for by law, the candidate who receives the number of votes necessary to elect him is entitled to the possession of the office and its emoluments.

5. SAME — JURISDICTION.— This right to an office thus ascertained is a private right, which the constitution protects, and which the courts will enforce. The distinction between the right to contest an election, and that to recover an office unlawfully withheld, announced.

6. OFFICE — PROPERTY.— An office of profit is not only a franchise, but is property, as clearly as any other thing can be made the subject of ownership; and when the lawful owner is deprived of its use and possession by an intruder, his right to have it restored to him by the courts is as clear as his right to recover any other property legally owned by him, and illegally withheld from him.

7. SAME — ELECTION.— If, in a direct proceeding to recover an office, it becomes necessary for the plaintiff to trace his right thereto through a popular election, provided for by law, he may do so; to deny him this privilege would be to destroy his right, if it existed. In doing this he is not restricted to the returns of election made by the managers, but may resort to the best evidence, which is to show the votes cast at the election.

8. SAME.— The return of the managers of an election in such a proceeding is only *prima facie* evidence of the state of the vote, which may be disproved by producing evidence furnished by the ballots themselves.

9. POLITICAL QUESTION.— The term " political question," as used in our decisions, refers to questions coming before the courts, the determination of which has for its object the settlement of some policy of the state, or of some local division of the body politic, and not the private rights of individuals, though the latter may be incidentally affected.

10. SAME.— Though the determination of the result of an election may be in one sense a political question, it is so only when sought in a contest regarding the election itself under the statute. It is not so when an inquiry as to who was really elected by the people arises incidentally, and is necessary to be known in determining rights claimed, and clearly cognizable before the courts.

11. CASES FOLLOWED.— McKinney v. O'Connor, 26 Tex., 5; State v. Draper, 50 Mo., 353; People v. Jones, 20 Cal., 50; Reid v. Moulton, 51 Ala., 255; 42 Conn., 333; 44 Miss., 352; and Hudson v. Solomon, 19 Kan., 177, approved and followed.

12. JURISDICTION.— It results that the district court has jurisdiction to try the right to an office, in a suit brought for its recovery by a party claiming the right to it, as against one who has usurped the office and who holds possession of it wrongfully, provided its value is $500 or more. In trying the right, if the claimant charges that an incorrect return of the votes that elected him was made, he has the right to give evidence to show what votes were placed in the ballot-box by showing the votes themselves.

13. QUO WARRANTO.— *Quo warranto* is a proper proceeding to determine disputed questions of title to public office. In such a suit, if the relator succeeds, the proper judgment is that defendant be ousted, and the relator placed in possession of the office.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

The opinion states the case.

*Finlay & Rose,* for relator, on the proposition that a direct proceeding to recover the office, and to try the right to the same, was a " suit, complaint or plea " of which the district court had jurisdiction, cited: Const. of Tex., sec. 8, art. 5; sec. 13, art. 1; Const. 1845, sec. 10, art. 4; Const. 1869, sec. 7, art. 5; Quo Warranto Act of 1879, R. S. Appendix, 47; Wright v. Allen, 2 Tex., 158; Banton v. Wilson, 4 Tex., 400; McKinney v. O'Connor, 26 Tex., 22; State v. De Gress, 53 Tex., 387; State v. Cocke, 54 Tex., 482; Flatan v. State, 56 Tex., 93; Williamson v. Lane, 52 Tex., 335; Gibson v. Templeton, Tyler Term, 1884 [62 Tex., 555]; Const. California, sec. 6, art. 6 (Const. of 1862; Desty, p. 100); *Ex parte* Whitlow, 59 Tex., 275; *Ex parte* Towles, 48 Tex., 433.

That *quo warranto* was the proper mode of procedure, they cited: Act of 1879, R. S., Appendix, 47; State v. De Gress, 53 Tex., 387; State v. Cocke, 54 Tex., 482; Flatan v. State, 56 Tex., 93; Watts v. State, 61 Tex., 184; Wright v. Allen, 2 Tex., 158; High on Ex. Remedies, secs. 49, 53, 623, 624, 619, 638, 639, 641, 603; Cooley on Const. Lim., " Contesting Elections," *625 (4th ed.), p. 789; McCrary on Elections, secs. 265, 266, 322, 324, 326, 264, and authorities; Wicks v. Jones, 20 Cal., 50; Stone v. Elkins, 24 Cal., 127; People *ex rel.* Budd v. Holden, 28 Cal., 123; State v. Lawrence, 38 Mo., 535; State v. Fitzgerald, 44 Mo., 425; Anthony v. Halderman, 7 Kan., 65; Lindsay v. Att'y Gen'l, 33 Miss., 508; Newsom v. Cocke, 44 Miss., 352; Bosmer v. State, 7 Ga., 473; Fulgham v. Johnson, 40 Ga., 165; Taylor v. Hand, 31 Ala., 383; State v. Burnett, 2 Ala., 140; Cal. Code Civ. Proc., Quo Warranto, § 802; State v. Stem, 13 Neb., 529; People v. De Bevoir, 27 Hunton (N. Y.), 596.

That the returns of the managers were not conclusive of the right to the office, they cited: McKinney v. O'Connor, 26 Tex., 5; Cooley on Const. Lim., " Contesting Elections" (4th ed.), p. 789, and authorities; McCrary on Elections, secs. 280, 281, 291, 379, 388, 389; High on Ex. Rem., secs. 624, 638, 639; The People *ex rel.* Wicks v. Jones, 20 Cal., 50; Magee v. Supervisors, 10 Cal., 377; The People v. Holden, 28 Cal., 123; The State v. Steers, 44 Mo., 223; State v. Wright, 10 Heisk. (Tenn.), 237; Hudson v. Solomon, 19 Kan., 177; Reid v. Moulton, 51 Ala., 255; State v. Fagan, 42 Conn., 33; Newsom v. Cocke, 44 Miss., 352; Rev. Stats., 2245, 3128.

*McLamore & Campbell,* for respondent, on their proposition that the refusal of the district court to permit the relator to proceed by *quo warranto* is not subject to revision, cited: Quo Warranto act 1879, R. S., sec. 1 of act in appendix.

The district court had no power to grant the relief sought, citing:

Const., art. 5, sec. 8; R. S., art. 1693 *et seq.;* Guadalupe Co. v. Wilson Co., 58 Tex., 230; Rogers *v.* State, 43 Tex., 406.

That the determination of the result of an election was a political question, to be regulated by the political authorities in the state, they cited: Wright *v.* Fawcett, 42 Tex., 203; Williamson *v.* Lane, 52 Tex., 335; McKinney *v.* O'Connor, 26 Tex., 22; Gibson *v.* Templeton, Tyler Term, A. D. 1884 [62 Tex., 555].

WILLIE, CHIEF JUSTICE.— This is an information in the nature of a *quo warranto* filed by the state of Texas upon the relation of Russell C. Jennett, against W. P. Owens, for the purpose of ousting the latter from the office of sheriff of Galveston county, and placing the relator in possession of the same.

The ground upon which the information is based is, that at an election held in Galveston county, on the 4th day of November, 1884, the relator was elected to the office by receiving a plurality of the popular vote, but that Owens had obtained the certificate of election, and had usurped, and was holding and executing the office without authority of law. The information charges fraud in the returns of election made from several of the precincts of the county, in that the vote of these precincts was not properly counted by the presiding officers. It alleges that had the vote been properly counted and returned at these precincts. the returns would have shown that Jennett had received a plurality of all the votes cast for sheriff, giving the precise number claimed to have been given to each of these candidates. It charges, also, that those who presided at one of the precincts named were guilty of gross misconduct in being drunk and unable to perform their duties, and in allowing unauthorized parties to tamper with the ballot-box, and in other respects, set forth in the information. The information prays for judgment of ouster, and that Jennett have possession of the sheriffalty of Galveston county, and be quieted in his title thereto. The office was alleged to be worth $5,000 per annum.

To this information the respondent filed a demurrer, objecting principally to the jurisdiction of the court to entertain the suit and try the right to the office in the manner prayed for in the petition. The court below held that it had no jurisdiction of the proceeding, because its object was to contest an election; and that it could not ascertain and adjudge the result of the polls other than as appears by the returns of the several managers of the election; and as the information showed that these returns elected the respondent, the suit was dismissed.

From this judgment an appeal is taken to this court.

· The previous decisions of this court, made under our present constitution, have established this principle: That the district court has no jurisdiction to try the contest of an election such as is provided for in the acts of May 8, 1873, July 20, 1876, and in our Revised Statutes, ch. 6, title 34. *Ex parte* Towles, 48 Tex., 413; Williamson *v.* Lane, 52 Tex., 335; *Ex parte* Whitlow, 59 Tex., 273; Gibson *v.* Templeton, 5 Tex. Law Rev., 18.

These decisions proceed mainly upon the common ground that such a proceeding is not a suit, complaint or plea wherein the matter in controversy is valued at or amounts to $500 exclusive of interest.

In all the cases cited above except that of Williamson *v.* Lane, the contest was not between parties claiming to have been elected to an office, or claiming any other right as against each other. The matter submitted for the determination of the court in the Towles and Whitlow cases was whether one locality or another had been chosen as the county seat of a county; and in Gibson *v.* Templeton the question was as to the legality of an election held for the purpose of determining whether spirituous liquors should or should not be sold within the limits of one of the counties of our state.

These were determined not to be suits or controversies between parties involving any particular amount or value. The judgment would not have determined, in favor of the one party as against the other, any matter of private right; but only a matter of public policy, which, without an express grant of authority by the constitution vesting jurisdiction in the judiciary, belonged to the legislative branch of the government.

The constitution gives the legislature the power to regulate the manner of removing county seats. It also requires the legislature to enact laws for determining whether the sale of intoxicating liquors shall be prohibited within prescribed limits.

It is part of the public policy of the state that county seats shall be located to best suit the convenience of the people of the county.

It pertains to the police powers of the legislature to have the sale of spirituous liquors prohibited in any locality where the people think it would subserve the interests of morality and good government that this should be done.

When an election is held under the authority of the legislature for either of these purposes, its indirect result may be to depreciate the value of the property of a private citizen by placing the county seat further from it, or to destroy a profitable business in the sale of ardent spirits. But every citizen holds his property subject to the constitutional right of the legislature to enact laws of this kind.

That it is depreciated in value by a change of county seat is a natural result contemplated by the organic law, and is but one of the sacrifices that the individual must suffer for the public good. That a trade which the constitution contemplates may be so injurious to good morals and public order that the people may wish to suppress it in a particular locality is embarked in by a citizen gives him no right in it that cannot be taken from him for the better police regulation of the vicinity. The question, therefore, as to whether such an election was legally or illegally conducted, relates only to the convenience, morals or good order of the particular community. When determined, no more is decided than that the people voted to have their seat of justice at one place rather than another; or that spirituous liquors should or should not be sold within certain limits. This is not a judicial question over which a contest may be made in the district court. It is not a case between parties in which a judgment can be rendered in favor of one as against the other, such as the district courts have authority to enter up. The judgment would only amount to a declaration that the result of an election was different from what the authorities having it in charge had pronounced it to be. This might result incidentally in benefit or damage to some citizen, but it is not rendered upon that ground, or for the sake of restoring a right to the injured party; nor is it enforced by any process issued from the court where the judgment is pronounced.

We come to consider now the case of a contest between parties as to the result of an election for which they were opposing candidates before the people. It is clearly a political question as to whether or not the proper state authorities shall create an office or shall provide to have it filled, as to how long an incumbent shall hold it, and as to the manner in which he shall derive his title to it. If it is determined by these authorities that it shall be filled by popular election, and that the candidate receiving a majority or a plurality of the votes shall be entitled to the office, the courts have no right to interfere and say that title to the office shall be derived otherwise. When the election takes place and the will of the people is expressed through the ballot-box, the candidate receiving the number of votes necessary to elect him is entitled to the possession of the office, its rights and emoluments. These are his property; his right to them is a private right which the constitution protects and the courts will enforce. The question then becomes essentially a judicial one. This is a principle firmly rooted in the jurisprudence of this country and needs no authority to support it. Hence we find that in all the decisions bearing upon contests of elections a

clear distinction is drawn between a proceeding merely to contest an election and one to recover an office unlawfully withheld from another. In the foregoing case of Williamson v. Lane this subject was discussed and the distinction pointed out by the then chief justice of this court.

According to the opinion of that learned judge, the principal difference consists in the object of the proceeding or in the judgment sought, and which the court may render in each of the cases. In the one the court can grant a certificate of election only or set aside the election altogether; in the other it adjudges the office itself, with all its fees and emoluments, to the party who shows the best right to it. He shows clearly, too, that the contests provided for in the statutes of 1873 and 1876 were not suits within the meaning of the constitution, because they might be presented either in chambers before the judge or before the court whilst in session; because further they might be determined without a jury, though one were demanded, and might be prosecuted in the district court whether the value of the office was more or less than $500. The case itself was that of a contested election, and seems to have been commenced and prosecuted as prescribed by the above statutes, and tried in chambers by the district judge. It was held that the court was without jurisdiction, because the proceeding was had under these statutes.

But at the same time it was distinctly announced that had it been a suit for the purpose of recovering the office, and it was of value equal to $500, the jurisdiction of the cause would belong to the district court.

This case, then, so far from sustaining the view of the jurisdictional question taken by the court below, is authority against it. And upon principle it cannot be doubted but that a suit for an office of the required value may be maintained in this manner. An office of profit is property, as much so as any other article that can be possessed. It is a franchise, and when the lawful owner of it is kept out of the possession of it by an intruder, he has as much right through the courts of the country to have himself placed in possession as to recover any other property unlawfully withheld from him.

The court below was evidently misled in supposing that because a suit for an office might involve a contest as to who was elected to it, that the courts could not determine it because they cannot try a contested election case.

When our courts hold that they cannot try the contest of an elec-

tion between parties, they mean that they cannot try it in the manner, under the circumstances, and with the results provided in the statutes upon that subject. They cannot make use of the process and proceedings provided by these statutes, and render a judgment merely that one or the other party is entitled to the certificate of election, without awarding him a judgment for the office to be enforced by the proper process of execution. But if in a suit for the office which they can entertain, the claimant's title is traced through a popular election, there can be no more objection to his showing as a muniment of title that he was duly chosen to the office by the people than to a plaintiff's showing in any case that he derived the right to his property by a just and legitimate chain of title. It would be idle to open the courts of the country for the trial of titles to lands, and yet forbid the plaintiff in such an action to exhibit his grant from the government; and it would be a useless privilege to allow one to resort to the courts to assert title to an office and not allow him to prove that he had been chosen to it by the voters participating in the election.

If allowed to prove an election to the office, the claimant must not be confined to the returns made out and forwarded to the proper department by the managers of the election. He must be permitted to prove his election by the best and most reliable evidence, viz., the votes cast in the election. If confined to the returns, his right of office is not made to depend necessarily upon the amount of ballots cast for him, but upon what the persons in charge of the ballot-boxes say was the result of the election.

It is urged that the statute contemplates that the decision of the managers shall be final. It is not so prescribed in the statute; in fact the whole spirit of the law is against any such conclusion, as is evidenced by the preservation of the ballot-boxes for examination in case of a contest, and an attempt to provide a tribunal in which such a contest may be tried.

The return of the managers is *prima facie* evidence only of the state of the vote, which may be disproved by a resort to the ballots themselves. The burden of proving that the return is not warranted by the actual state of the vote is upon the party alleging the fact. Hudson *v.* Solomon, 19 Kans., 177.

It is further claimed that in deciding an election by ballot the court is taking jurisdiction of a political question. Why this is so in case of an election by ballot and not in case of an appointment we cannot understand. The one is no more than an appointment by the people and the other by some named officer.

Chief Justice Roberts in *Ex parte* Towles said that styling a question *political* conveys no very definite conception of it as a subject of legal adjudication. A misconception as to its meaning as used in our decisions has certainly arisen in the present case.

We consider the term as used in our decisions upon subjects such as we are now considering to refer to such questions, coming before the courts, the determination of which has for its primary object the settlement of some policy of the state, or of some local division of the body politic, and not the private rights of individuals, though the latter may be incidentally affected. Such are the cases already alluded to of local option elections, and those held to determine the location of a county seat. See, also, Arberry *v.* Beavers, 6 Tex., 469; Baker *v.* Chisholm, 3 Tex., 157; Walker *v.* Tarrant County, 20 Tex., 16.

It has also been said that the determination of the result of an election between contending candidates for office is in the nature of a political question. Rogers *v.* Johns, 42 Tex., 339; Wright *v.* Fawcett, id., 203. This is somewhat questionable; but in the cases where the view was expressed reference was evidently made to the contest of an election as provided in our statutes, and not to a suit for an office. See Williamson *v.* Lane, *supra.*

All our decisions recognize a suit for an office brought in the district court in manner and for the purposes we have stated to be a matter of judicial cognizance, and to be determined by judicial methods. If in the trial of such a cause it becomes necessary to investigate political subjects, such as the ballots of voters, or the conduct of officials conducting elections, this may be done, if the evidence to be produced tends to determine the right in controversy between the parties. One elected to office by the people holds a right to its enjoyment by the highest patent upon which title to property can rest. He cannot be defrauded of his right by the act of ministerial officers in charge of the ballot-boxes, and may establish it by proof of the very facts through which he traces his right to its possession.

These views are supported not only by reason but are in full accord with the previous decisions of our own state, one of which only it will be sufficient to cite.

In McKinney *v.* O'Connor, 26 Tex., 5, the decision rested upon the legality of the votes at one of the voting places. It was shown by extraneous proof that there could not possibly have been as many votes cast at this box as were counted for O'Connor, and the illegal portion of the votes were discarded, which decided the right

to the office in favor of McKinney.   We have no authorities in our state to the contrary.

It is only necessary for us to cite a few authorities from other states to show that it is the received doctrine throughout the Union thit the ballot-boxes may be examined by the court.   So far as we are able to examine there is no conflict of authority on this question. State v. Draper, 50 Mo., 353; People v. Jones, 20 Cal., 50; Magee v. Supervisors, 10 Cal., 377; Reid v. Moulton, 51 Ala., 255; State v. Fagan, 42 Conn., 33; Newsom v. Cocke, 44 Miss., 352; Hudson v. Solomon, 19 Kan., 177.

We hold, therefore, that the district court has jurisdiction to try the right to an office in a suit brought for its recovery by a party claiming the right to it as against one who has usurped the office and holds possession of it wrongfully, provided its value is $500 or more.   We hold, further, that the right to try the title to the office carries with it the right to establish that title by evidence of the means through which it was acquired.   If acquired by reason of having received the requisite number of votes, and an incorrect return of these votes is charged to have been made, the best evidence of the contents of the ballot-box, viz., the votes placed in it, may be received to show the incorrectness of the returns.

The only question left for our decision is:   Did the appellant pursue the proper remedy for the recovery of an office, viz., an information in the nature of a *quo warranto* filed by the state's counsel on relation of the claimant?

This proceeding has been adopted into our statutes almost in the same language as used in the statute of 9 Anne, ch. 20.   A similar proceeding forms part of the jurisprudence of almost every state of the Union.   Hence, it has undergone frequent adjudication in the various courts of the United States.   It is universally held that it may be used and is the proper proceeding to determine disputed questions of title to public office, and for deciding the proper person entitled to hold the office and exercise its functions.   In fact, it seems to be in universal use for that purpose wherever a statute similar to our own is in force.   High on Ex. Leg. Rem., § 623 *et seq.*, and authorities cited; Lindsey v. Att'y Gen., 33 Wis., 508.

Though brought in the name of the state it is usually upon the relation of the real party plaintiff, the claimant to the office, and the judgment rendered in case the relator succeeds is that the defendant be ousted and he placed in possession of the office.

This is precisely the judgment which our courts have the power to render in a suit for an office, and there is nothing in our constitu-

tion which prohibits this judgment to be reached through means of the information, and we see no reason why it may not be made the means of serving the same purpose in this state as in our sister states.

In fact it has been intimated in frequent cases that a *quo warranto* would reach a case like the present. State *v.* Cocke, 54 Tex., 482; Watts *v.* State, 61 Tex., 184; Wright *v.* Allen, 2 Tex., 158; Bradley *v.* McCrabb, Dallam, 504.

We are of opinion that the court erred in sustaining the demurrers of the respondent below, and for this error the judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered February 3, 1885.]