## E. BELL v. K. H. FAULKNER.

### No. 2412.

1.   **Suit for Office — District Court.** — That the District Court may entertain a suit for an office the value of which is within the court's jurisdiction is not an open question.   It has always been recognized.   See allegations making the suit one for the office and not a contest.

2.   **Irregularities.**—That the County Commissioners Court disregarded the ward subdivisions of the city of Hempstead, of which there are four, and divided the city into two election precincts, adding to each a part of the adjoining country, will not annul an election for a county officer; that is, votes given in the two precincts should not be disregarded in a suit for an office.

3.   **Case Adhered to.**—Davis v. The State, 75 Texas, 424, adhered to.

4.   **A Minor Acting as Clerk of an Election.**—A minor acting as clerk of an election may be considered a de facto officer, and the will of a majority of the voters will not be defeated by reason of such fact.

5.   **Pleading.**—The plaintiff in general terms alleged that he had been elected to the office of sheriff, and was entitled to it, and that its value was sufficient to confer jurisdiction upon the court.   The special facts alleged and relied upon to sustain his election fall short of doing so.   The demurrer of defendant, therefore, was properly sustained.

APPEAL from Waller.   Tried below before Hon. WM. H. BURKHART. The opinion states the case.

*W. J. Poole*, for appellant, cited Const., art. 5, sec. 8; Const., art. 6, sec. 2; Rev. Stats., arts. 1668, 1673, 1689, 1719–1750; 4 Texas, 402; 25 Texas, 5; 42 Texas, 203–339; Laws 21st Leg., p. 10.

*A. J. Harvey,* also for appellant.—1. Did the District Court have jurisdiction of the subject matter? 2. Was the petition good on general demurrer? That these questions should be answered in the affirmative, we invite the attention of the court to the petition, which alleges the illegality of the election and the value of the office, and appropriate allegations showing his right to relief in case the election in the city of Hempstead was illegal. That it was illegally held and the judgment wrong, the court is cited to article 1664 of the Revised Statutes, as amended by the Twenty-first Legislature, February 12, 1889, which we contend is mandatory; also, Revised Statutes, articles 1667, 1668, 1673; and that the court had jurisdiction, Revised Statutes, articles 1722, 1728, 1729, 1743, 1744; also, State Constitution, article 5, sections 3, 8, that appellant's petition is a complaint or plea that sets up a demand of value exceeding $500. See, also, Hawes on Jurisdiction of Courts, title "Mandamus," note 5; McCrary on Elections, secs. 249, 251; Cool. Const. Lim., 192, 194, 603.

*H. M. Browne* and *J. J. Mahan,* for appellee.—It is not the amount in controversy alone which confers jurisdiction on the District Court in contested elections, but the nature and character of the suit brought. There are but two recognized remedies, to-wit, procedure by quo warranto and an ordinary suit for the office, the last named filed as in other civil suits, with citation to defendant. The case at bar being no such suit, the District Court had no jurisdiction to entertain the appellant's cause of action. Williamson v. Lane, 52 Texas, 343; The State v. Owens, 63 Texas, 264.

COLLARD, Judge, *Section A.*—The first question in this case is, Was this a proceeding to contest an election, or a suit for the office? Judging from the form of the petition, the allegations, and the prayer, we think it was the latter.

The petition is addressed to the district judge. It alleges, that the petitioner, who is styled relator, was elected to the office of sheriff for the county of Waller at the general election held in the county November 4, 1890; that the certificate of election was issued to his competitor, K. H. Faulkner, who unlawfully holds the office and enjoys its emoluments and honors, to relator's great damage; that the value of the office for the term of two years from the 10th day of November is $3000; and the prayer is, that the respondent "be ousted of said office of sheriff of Waller County and the relator installed therein." The record does not show that the proceeding was begun by notice from the contestant to the contestee, with a statement of the grounds relied on, as required in the statute relating to the mode of contesting an election (Sayles' Civ. Stats., art. 1724); nor does it appear that the reply thereto was delivered to the contestant in the manner directed by the statute

(Id., art. 1725); but the proceeding was begun and replied to by demurrer and answer in the District Court, filed as in an ordinary suit. The case was heard in term time, and determined by the presiding judge upon the general and special demurrer sustaining the same. There is nothing in the record to show that the proceeding was one to contest the election; besides, all necessary allegations were made to give the court jurisdiction to try the right to the office and oust the intruder, if he should be found to be such. The suit was for the office and not an election contest. That the District Court may entertain a suit for an office the value of which is within the court's jurisdiction is not an open question. It has always been recognized that quo warranto is only a cumulative remedy. State v. Owens, 63 Texas, 261; Williamson v. Lane, 52 Texas, 335; McAllen v. Rhodes, 65 Texas, 351.

But the question still remains, Did the court err in sustaining the demurrer? The contention of the plaintiff below was and is, that the election in the city of Hempstead was illegal for the following reasons: The city was incorporated under the general laws of the State, and consisted of four wards, which are by statute made voting precincts, but that the election was held at only two places in the city—at the court house and at Kempner's drug store; that there were "no *legal* orders made by the Commissioners Court or county judge by which Amcler or Crook (the acting managers of the election) were managers of the aforesaid election, and that the election at said boxes was illegal and void;" that if the votes so cast at these boxes were thrown out, he would be elected by the majority vote. And further, that there were never any "legal orders of the Commissioners Court of Waller County designating the place or places at which an election for State and county officers should be held in the corporate limits of the city of Hempstead aforesaid, and such attempted or pretended orders appearing upon the minutes of the proceedings of said court are null and void, because of the attempt in the said pretended orders to direct and permit voters who resided beyond and outside the limits of the corporation to vote within the said limits in said pretended orders specified, to-wit, the court house and market house."

It seems from the foregoing, that the Commissioners Court of Waller County had passed orders establishing two voting precincts in the city of Hempstead, including portions of the county outside the city limits, disregarding the wards which by law are made election precincts. Sayles' Civ. Stats., art. 1664; Gen. Laws 1889, p. 10. In the appellant's brief, filed May 18, 1891, at Austin, and filed again at this term February 13, 1892, the statements under propositions show that the city was divided into four wards, each an election precinct, and that "the Commissioners Court divided the justice precinct in which Hempstead is situated into two voting precincts, Nos. 1 and 8, causing parties who lived in the country to vote in the corporation, and parties who lived

in one ward of the corporation to vote in another and different ward or voting precinct, and the managers, judges, and clerks who held said election lived in other and different wards or voting precincts from that in which they voted and held the election, one of said clerks being a minor under 21 years of age, and not entitled to vote;" and hence it is stated that none of the officers who held the election were legal voters at the polls where they held the election.

These facts it is contended rendered the election at such polling places void. Conceding that such orders were made as stated and alleged, it does not follow that the poll was void. This question is fully discussed by Justice Gaines in Davis v. The State, 75 Texas, 424, where the evidence showed, that the city of "San Marcos was incorporated and divided into four wards, and that but two election precincts had been established in the city by the commissioners, and that these were established without reference to the wards, and that they included parts of the surrounding country;" and it was held, that the votes cast at such voting precincts should be counted, or more definitely, that "where the Commissioners Courts have fixed the precincts and the election has been held, it ought not to be set aside because they have failed to make each ward of a city an election precinct, unless it be shown that they have acted with a fraudulent purpose." Id., p. 433. The opinion discusses all the statutes bearing upon the question. Article 1664 of the Revised Statutes, requiring each ward in an incorporated city to be an election precinct, has been amended by certain restrictions and provisos; but there is no change in it in regard to the question before the court in Davis v. The State, or the question before us. Gen. Laws 1889, p. 10.

All the irregularities of the election complained of in the petition except one are explained by the act of the commissioners in establishing the two precincts for election in the one justice precinct. We have seen that the election was not invalidated for these causes. Another complaint is, that at the Kempner drug store box, where respondent received 38 majority over relator, one of the acting clerks was under voting age, was not qualified to vote or act as such officer, and therefore that poll should be excluded. It is not shown that the exclusion of the votes at this poll would change the result; but if it did, it would be immaterial. He was a de facto officer, and the will of the majority of voters could not be so defeated, especially in a collateral proceeding, as this is. Hunnicutt v. The State, 75 Texas, 239.

We have noticed all objections to the election referred to in appellant's briefs and arguments, and consider any other that may be mentioned in the petition as waived; but if they should require consideration, they could not be sustained in this suit. They are mere irregularities and informalities that can not be invoked for the purpose of excluding the vote cast. The election, so far as is disclosed by the petition, was

fairly held; the declaration of the result granting the certificate of election to Faulkner represented the choice of the voters in the county at an election held on the day required by law, and such choice should not be defeated by technical objections such as are found in the petition. Fowler v. The State, 68 Texas, 30, et seq.

The petition in a general allegation declares plaintiff was elected to the office by the legal vote cast; that he is entitled to the office, of value sufficient to give the District Court jurisdiction to try the case; but the definite allegations relied on to establish the main fact of election to the office fall short of doing so.

We conclude that the general demurrer was correctly sustained, and that there was no error in dismissing the case, and that the judgment should be affirmed.

*Affirmed.*

Adopted March 26, 1892.

JUSTICE HENRY dissenting: Referring to his dissenting opinion in case of Davis v. The State, 75 Texas, 420. The dissenting opinion did not come to hands of the Reporter, and is here inserted.

### DISSENTING OPINION BY JUDGE HENRY IN DAVIS V. THE STATE.

I find myself unable to concur in so much of the opinion of the majority of the court as relates to the election held in San Marcos, for the following reasons:

Articles 1664–1666 of the Revised Statutes read: "In each incorporated city, town, or village each ward shall constitute an election precinct." "There shall be designated by order of the Commissioners Court one place within each election precinct at which all elections in said election precinct shall be held." The Constitution provides, that "All electors shall vote in the election precinct of their residence." Each ward of the city of San Marcos was a separate election precinct without regard to any action or nonaction of the County Commissioners Court. That body had authority to name *one place* within each ward at which to hold the election and to appoint one presiding officer in each. The Constitution forbade any person voting in a ward in which he did not at the time live. Neither the Constitution nor the laws can be changed, disregarded, or silenced by the voter or by the County Commissioners Court. An order of the court assuming to disregard the law that makes the boundaries of each ward define and limit one separate election precinct is a nullity; and the voter who casts his ballot in a ward in which he does not live disregards the Constitution; and it necessarily results, that his vote can not be treated as lawful. The doctrine of de facto election precincts finds no

place in the law. What it is unlawful for the Commissioners Court and the voter to do in the first instance can not become right or lawful by being repeated. The law, much less the Constitution, can not be repealed or superseded by such methods. Notwithstanding the wards were not recognized as election precincts, and that all votes cast in any ward by nonresidents of that ward were illegal, yet if there had been but one poll held in any ward the votes of all residents of such ward otherwise qualified to vote ought to have been counted; and for such purpose it would have been proper to have examined into such ballot box. The law does not, however, authorize two separate elections to be held in one ward or in any other election precinct. It directs and authorizes one only. For the purpose of preventing fraudulent voting the policy of the law is, that there shall be only one poll at which one person can cast his vote.

Applying the foregoing rules, it follows, that as ballot boxes 1 and 2 were both situated in the same ward of an incorporated town that had been divided into wards, the votes of all residents of the ward were unlawful, because two polling places were used in one election precinct or ward instead of one only, as the law requires; and the votes of all nonresidents of the ward were unlawful for that and the additional reason that they were prohibited by the Constitution from voting outside of the election precinct or ward of their residence. The prohibition upon voting outside of the precinct in which the voter resides was incorporated into the Constitution to prevent fraudulent voting and preserve the purity of the ballot box. It took the place of registration under the preceding Constitution. It is the most important if not the only safeguard provided under our system against repeating and other descriptions of fraudulent voting. It furnishes an easy means of detecting a fraudulent voter, as the fact of his residence in the precinct is easily susceptible of proof on the one hand, and on the other may be disproved more easily than any other required qualification. It is of special importance in cities, where the changes of population are greater and the voters not so well known to each other as in the rural districts. The better known the limits of the election precinct are, and the longer it continues the same, the better will be the facilities for guarding the elections held in it. This no doubt furnished to the Legislature a reason for permanently establishing city wards as election precincts.

While the rural precincts may be changed yearly by the county commissioners, the wards of cities are more permanent, and as, in addition to other elections, those for the city are held in them, additional opportunities are furnished to voters to become acquainted with each other. If in different elections held by the same voters different precinct lines exist, confusion and uncertainty will be likely to result that will not occur when they always remain identically the same.

If, however, no good reasons could be urged in support of the policy of the law, it would still be sufficient to find that a law of the Legislature has plainly said, that " each ward shall constitute an election precinct," and that the Constitution demands, that "all electors shall vote in the election precinct of their residence." The law has conferred upon the County Commissioners Court the authority to divide all of the county into election precincts, except so much of the county as may be covered by an incorporated village, town, or city that is divided into wards. Jurisdiction for that purpose within the limits of such corporation has not been conferred, and in my opinion does not exist. If such an incorporation in fact exists, the law of the Legislature divides it into wards, and the Constitution commands their observance. If the fact exists, it is the duty of the Commissioners Court to know and observe it. The act or fact of incorporation does not depend upon the Commissioners Court, but upon the people who incorporated the town. The town makes the wards, and the Legislature makes them election precincts. The Commissioners Court may neglect their duty and not know of the corporation (though it is difficult to see how that can be), but still their neglect or their ignorance of the fact will not unmake the corporation, destroy the wards, or change the imperative commands of the Constitution and law of the Legislature. The County Commissioners Court may in the discharge of its duty, when dividing the county into election precincts, appointing places for holding elections, and appointing election officers, properly institute inquiries whether there exists in their county any village, town, or city divided into wards, and if they find there is none, proceed to exercise jurisdiction over the whole county, if they are correct in their finding. But when such corporation does in fact exist, it can not be less a fact because the Commissioners Court fail through error of law, judgment, or fact to so find. It is the duty of the County Commissioners Court to ascertain and know whether there is an incorporated town divided into wards in their county, in order that they may properly discharge their own duties of appointing election officers and a place to vote therein; but they have no power whatever to create, change, destroy, or in any manner affect the existence of such corporations or the wards into which they are divided. They can not repeal by nonobservance, any more than they can by direct act, a law of the Legislature or silence the mandate of the Constitution. The Commissioners Court may investigate and find there is no corporation divided into wards, and lay out precincts over the territory; and yet, if in fact and for the observance of any right of the inhabitants the proof shows there was such a corporation, the law that makes the wards election precincts comes in conflict with the opposing act of the commissioners and overturns it.

It will not be contended that Commissioners Courts have the right to disregard the law; but because they did in fact disregard it, it is

contended that it will be presumed that they ascertained the fact did not exist; it will, in other words, be presumed that such incorporation did not exist, because the Commissioners Court acted contrary to it. That will not do when there is positive evidence to the contrary. If the record before us contained no evidence on the subject, then a presumption would arise from the disregard of it by the Commissioners Court that there was no such corporation. It is well settled, that presumptions are indulged in the absence of evidence, and never against it. If such a rule is to prevail, the Constitution and legislative provisions on this subject are dead letters, because the Commissioners Courts may disregard them in every instance, and from the very fact and act of disregarding them the conclusive presumption would arise that they ascertained that such incorporated towns did not exist, notwithstanding the uncontroverted evidence may show that they did.

My opinion is, that every act of Commissioners Courts beyond appointing a place to vote and election officers in incorporated villages, towns, and cities divided into wards, whether done with or without investigation, is a nullity; and the actual election precincts established by law, and the duty of the voters under the Constitution to observe them, stand unchanged.

The failure of the Commissioners Court to regard each ward as a lawful and separate precinct, or to appoint a place in each for voting, or to appoint officers to hold the election in each, can not operate to disfranchise the voters, as they may no doubt assemble at a proper place in their ward, choose their officers, and, acting with proper publicity, hold a lawful election.