SHIPMAN v. JONES.

SAME v. CROW.

(Nos. 819, 820.)

(Court of Civil Appeals of Texas. El Paso. Nov. 8, 1917. Rehearing Denied Dec. 13, 1917.)

1. CONSTITUTIONAL LAW ☞68(1) — "ELECTION CONTEST."

An election contest is not a matter pertaining to the ordinary administration of the law in courts of justice, but in its nature is a political question, to be regulated by the political authority.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Election Contest.]

2. QUO WARRANTO ☞27—UNLAWFUL WITHHOLDING OF OFFICE—JURISDICTION OF DISTRICT COURT.

The rule that an election contest is not a civil suit or cause, so that the district court has no jurisdiction thereof, under the constitutional provision giving it jurisdiction of all suits where the amount in controversy amounts to $500, has no application in the case of an information in the nature of quo warranto, prosecuted in the name of the state against one charged with unlawfully withholding an office, the matter in controversy being the title to the office.

3. QUO WARRANTO ☞27 — CONTESTS AND SUITS—JURISDICTION OF DISTRICT COURT—CONSTITUTION.

Prior to the amendment of Const. art. 5, § 8. in 1891, to confer on the district court jurisdiction of contested elections, the district court had no jurisdiction of an election contest, but did have jurisdiction of an information in the nature of quo warranto, prosecuted in the name of the state, contesting the result of an election as declared, to remove an intruder and install the person entitled, and it also had jurisdiction of a suit for an office, the value of which was within the court's jurisdiction.

4. ELECTIONS ☞275—CONTEST—JURISDICTION OF DISTRICT COURT—STATUTE.

The jurisdiction of the district court of a contested election can be invoked only by compliance with Rev. St. 1911, arts. 3046–3078, executing Const. art. 5, § 8, conferring on the district court jurisdiction of contested elections.

5. COURTS ☞155—OFFICERS—TITLE TO AND POSSESSION OF OFFICE—"SUITS FOR OFFICE"—STATUTE.

Suits by the duly elected treasurer of a county against two persons, one of whom usurped such office and illegally held it for a year, when he resigned to make place for the other, under certificate of appointment to the office from the county judge, were suits for an office, though allegations of the petitions questioned the validity of certain votes counted for the usurper, so that the district court had jurisdiction, though Rev. St. 1911, arts. 3046–3078, prescribing the rules by which an election contest may be tried in the district court, was not complied with.

6. ELECTIONS ☞275—CONTEST—SUIT FOR OFFICE—JURISDICTION OF DISTRICT COURT.

Const. art. 5, § 8, as amended, in 1891, to give the district court jurisdiction of contested elections, and Rev. St. 1911, arts. 3046–3078, prescribing the rules by which an election contest may be tried, enlarged the jurisdiction of the district court, and did not limit its original power to try a suit for an office.

7. ELECTIONS ☞177—BALLOTS—LEGALITY—SIGNATURE OF PRESIDING JUDGE.

Under Rev. St. 1911, arts. 3001, 3011, as to the delivery of ballots and their signature by the judge, 50 ballots for county treasurer, without the signature of the presiding judge written on the blank side thereof when they were cast, counted, and returned for a candidate, were illegal, and should not have been counted and returned for him.

Appeal from District Court, Jeff Davis County; Jos. Jones, Judge.

Suits by O. L. Shipman against W. T. Jones and W. S. Crow. From judgments of dismissal, plaintiff appeals; the appeals being consolidated on motion. Reversed and remanded.

J. R. Hill, of Alpine, for appellant. C. C. Belcher, of Del Rio, and C. R. Sutton, of Marfa, for appellees.

HIGGINS, J. In the case of Shipman v. Jones, appellant filed his first original petition in the district court of Jeff Davis county on January 22, 1917. This was superseded by a first amended original petition, filed July 10, 1917, the substance of its allegations being as follows: That a general election was held on November 7, 1916, in Jeff Davis county, for the election of county officers, and the plaintiff was duly and legally elected to the office of treasurer of that county and by reason thereof was entitled to the office for the term of two years and to the emoluments and fees thereof, which would amount to the sum of $3,000 for the term, and that the office for the term was worth said sum; that on November 15, 1916, Jones, illegally claiming the office, usurped and intruded himself into the same and excluded plaintiff therefrom and illegally held the office and exercised the powers and performed the duties thereof until May, 1917, when he pretended to resign, and that during the time Jones held the office he appropriated the emoluments thereof, amounting to the sum of $1,500; that Jones claimed the office under a certificate of election delivered to him

by the county judge certifying that he had received 181 votes, that being the greatest number polled for any person at said election for that office; that said certificate was not true; that Jones did not receive 181 legal votes, but that a large number of illegal votes were cast, counted, and returned at said election for Jones, and that such number of illegal votes were sufficient to change the result of the election, and that plaintiff received 159 legal votes cast at the election, and that by reason thereof plaintiff was entitled to the office; that in election precinct No. 5, nine votes (the voters being named and ballot number given) were cast for Jones and counted for him, and that the same should not have been counted for him because the ballots did not have the name of the presiding judge of the election precinct written on the blank side thereof, as required by law; that in election precinct No. 6 a number of persons named in the petition (aggregating 41) voted for Jones (ballot numbers being given), and their ballots were counted and returned for him and included in the number of votes shown by said election certificate to have been received by Jones, but that said ballots were illegal and should not have been counted and returned for him because the name of the presiding officer of such election precinct was not written on the blank side of the ballot as required by law; that when they were counted the presiding officer did not write his name thereon until the same had been counted and the returns made and sealed up, after which had been done, the presiding judge of the election opened the ballot box and took the ballots therefrom and wrote his name on the blank side thereof and redeposited them in the box, and that the ballot of one of the voters in said election precinct should not be counted for the further reason that, after the voter had voted and the ballot deposited in the ballot box, the voter opened the box and took his ballot therefrom and changed the same and wrote upon it and then redeposited it in the ballot box; that by reason of the premises plaintiff was entitled to receive the election certificate to the office, but that the certificate of election was delivered to Jones, who, on November 15, 1916, qualified and entered upon the discharge of the duties of treasurer and since that time, up to the ———— day of May, 1917, had received and appropriated the emoluments of the office to his own use and benefit, to plaintiff's damage in the sum of $1,500. Plaintiff prayed that the ballot box be brought into court and the ballots cast in such precincts recounted, and the ballots, the legality of which was questioned as above indicated, be not counted for Jones, and that the number of illegal votes determined by recount be deducted from the total vote of Jones, and that plaintiff have judgment that defendant was not entitled to the office, but that the plaintiff was, and that

plaintiff be permitted to qualify within 20 days after final judgment and to enter upon the discharge of the duties of the office, and that the defendant be commanded to surrender the office to plaintiff upon his qualification, and, further, that he have judgment for all fees and emoluments received by the defendant from November 15, 1916, and for general and special relief.

The petition in the case of Shipman v. Crow was filed on June 4, 1917, and was superseded by his first amended petition filed July 12, 1917. The amended petition in this case contains the same allegations as are contained in the Jones Case, and in addition thereto it was averred that Jones pretended to resign the office in May, 1917, and that Crow from that date was claiming the office under certificate of appointment delivered to him by the county judge, certifying that Crow, in the month of May, 1917, was appointed to such office by the commissioners' court; that the action of the commissioners' court in thus appointing Crow was without warrant of law and unauthorized and void for the reason that no vacancy existed at said time in the office, as the plaintiff had been duly elected thereto by a majority of the qualified voters of the county at the election named, but had been excluded from the office by the unlawful acts of Jones and Crow; that on or about the ———— day of May, 1917, the defendant Crow qualified and entered upon the discharge of the duties of the office and since that time had received the emoluments thereof to plaintiff's damage in the sum of $1,500; that at the term of the commissioners' court at which Crow was appointed treasurer, plaintiff filed his application with the court, requesting it to appoint him treasurer of the county, showing to the court that he had been duly elected thereto and had been excluded therefrom as above set out; that Jeff Davis county has no county attorney; that the plaintiff had applied to the district attorney and the Attorney General of the state for permission to bring quo. warranto proceedings in their names, but that the same in both instances was refused. The prayer was of the same nature as in the petition in the Jones Case. General and special exceptions were interposed by the defendants in the two cases, which were sustained by the court and the suits dismissed. Plaintiff thereupon prosecuted these appeals, and such appeals in this court have been consolidated upon motion.

The controlling question in these appeals relates to the jurisdiction of the district court over the proceedings brought by appellant. The solution to the question depends upon a determination of whether the proceedings are to be considered as an election contest or a suit for an office.

[1] Our courts have recognized a clear distinction between an election contest and a suit to recover an office unlawfully withheld from another. Williamson v. Lane, 52 Tex.

335; State ex rel. Jennett v. Owens, 63 Tex. 261. The distinction was made with respect to the jurisdiction of the courts over such controversies. It proceeds upon the theory that an election contest is not a matter pertaining to the ordinary administration of the law in courts of justice, but in its nature is a political question to be regulated by the political authority; that to decide the result of an election was a "part of the process of political organization" and "not a question of private right." Rogers v. Johns, 42 Tex. 339; Wright v. Fawcett, 42 Tex. 203.

Accordingly, in the last-cited cases, it was held, under the Constitution of 1869, that the district court had no jurisdiction of a contested election proceeding between private individuals, because such a contest was not a "suit, complaint, or plea," within the meaning of the Constitution conferring jurisdiction upon the district court—

"of all suits, complaints, and pleas whatever, without regard to any distinction between law and equity, when the matter in controversy shall be valued at, or amount to, one hundred dollars, exclusive of interest."

In Odell v. Wharton, 87 Tex. 173, 27 S. W. 123, and State v. Thompson, 88 Tex. 228, 30 S. W. 1046, Judge Brown again announced the rule that a contested election was not a civil suit, cause, or complaint, and that under the Constitution of 1876, as it was prior to the amendment of 1891, the district court had no jurisdiction to try contested elections. To the same effect is Ashford v. Goodwin, 103 Tex. 491, 131 S. W. 535, Ann. Cas. 1913A, 699.

[2] The rules announced in the cited cases, to the effect that an election contest is not a civil suit or cause, and that the district court had no jurisdiction under the constitutional provision giving them jurisdiction of all suits, complaints, and pleas whatever where the amount in controversy is valued at or amounts to $500, has no application in the case of an information in the nature of quo warranto prosecuted in the name of the state against one charged with unlawfully withholding an office. Such a proceeding was held to be in the nature of a civil remedy, and though the action was in the name of the state the "matter in controversy" was still the title to the office, and if that amounted in value to $500, the cause came within the constitutional jurisdiction given to the district court. State v. De Gress, 53 Tex. 387.

In State v. Thompson, supra, it was said:

"A proceeding by information in the nature of quo warranto has for its primary object contesting the correctness of the result of the election as declared. Its secondary purpose is to remove the intruder, and to install the person rightfully entitled to the office. It is therefore a proceeding or case for the contest of an election; that is, one of that character of proceedings."

As noted above, the courts have recognized a distinction between an election contest and a suit for an office. And it has been held that the district court had jurisdiction of a suit for an office, as distinguished from contested election cases, under the constitutional provision giving them jurisdiction "of all suits, complaints, and pleas whatever," etc. State v. De Gress, supra; Bell v. Faulkner, 84 Tex. 187, 19 S. W. 480; Williamson v. Lane, supra; Harris v. Williamson, 45 Tex. Civ. App. 65, 99 S. W. 713; State ex rel. Jennett v. Owens, 63 Tex. 261.

[3] So, prior to the amendment in 1891 of section 8, art. 5, of the Constitution, it follows that the district court had no jurisdiction of an election contest, but did have jurisdiction of an information in the nature of a quo warranto prosecuted in the name of the state, thereby contesting the result of the election as declared, and to remove an intruder and install the person rightfully entitled to the office; and it also had jurisdiction of a suit for an office, the value of which was within the court's jurisdiction, as distinguished from an election contest.

In 1891, section 8, art. 5, of the Constitution, was amended so as to confer upon the district court jurisdiction "of contested elections." This amendment was held to be not self-executing; that since a contested election was not a civil suit or cause it could not be tried by the proceedings had in such cases, and in the absence of legislation prescribing the rules by which an election contest might be tried in the district court, that court had no jurisdiction. Odell v. Wharton, supra. Such legislation was enacted and appears in the Revised Statutes as chapter 8, title 49.

[4] As a corollary to the rule so announced in Odell v. Wharton, it would follow that the jurisdiction of the district court of a contested election could only be invoked by a compliance with the provisions of the statute. It has been so held. Wright v. Fawcett, supra; Lindsay v. Luckett, 20 Tex. 516; Cauthron v. Murphy, 61 Tex. Civ. App. 462, 130 S. W. 671; Bassel v. Shanklin, 183 S. W. 105; Mercer v. Woods, 33 Tex. Civ. App. 642, 78 S. W. 15; Swenson v. McKay, 47 Tex. Civ. App. 483, 106 S. W. 934; Calverley v. Shank, 28 Tex. Civ. App. 473, 67 S. W. 434; Messer v. Cross, 26 Tex. Civ. App. 34, 63 S. W. 169.

The case presented by appellants' petitions do not show a compliance with the statutory provisions relating to election contests. Therefore, if the allegations of the petitions are to be considered as presenting the case of a contested election, then the district court was without jurisdiction because of the failure to show compliance with such statutes. The case is not an information in the nature of a quo warranto prosecuted in the name of the state. So if the district court has jurisdiction over the controversy it is because the suit is for an office and is not an election contest. Appellees contend that it is a contest of an election.

The distinguishing features of a suit for an office from an election contest are announced in Williamson v. Lane and State ex rel. Jennett v. Owens, supra. In the Williamson Case it was said that in a suit for an office the immediate right of the plaintiff to the office and its fees and emoluments is the purpose and direct subject-matter of the suit. That is the case made by these petitions, as is apparent from the allegations and the relief sought. It is true that the allegations question the validity of certain votes counted for appellee Jones, and involves a contest as to who was elected to the office, but this does not make it any the less a suit for the office. This phase of the case is controlled by the opinion rendered in State ex rel. Jennett v. Owens, supra, where it was said:

"The court below was evidently misled in supposing that because a suit for an office might involve a contest as to who was elected to it, that the courts could not determine it because they cannot try a contested election case. When our courts hold that they cannot try the contest of an election between parties, they mean that they cannot try it in the manner, under the circumstances, and with the results provided in the statutes upon that subject. They cannot make use of the process and proceedings provided by these statutes, and render a judgment merely that one or the other party is entitled to the certificate of election, without awarding him a judgment for the office to be enforced by the proper process of execution. But if in a suit for the office which they can entertain, the claimant's title is traced through a popular election, there can be no more objection to his showing as a muniment of title that he was duly chosen to the office by the people than to a plaintiff's showing in any case that he derived the right to his property by a just and legitimate chain of title. It would be idle to open the courts of the country for the trial of titles to lands, and yet forbid the plaintiff in such an action to exhibit his grant from the government; and it would be a useless privilege to allow one to resort to the courts to assert title to an office and not allow him to prove that he had been chosen to it by the voters participating in the election. If allowed to prove an election to the office, the claimant must not be confined to the returns made out and forwarded to the proper department by the managers of the election. He must be permitted to prove his election by the best and most reliable evidence, viz. the votes cast in the election. If confined to the returns, his right of office is not made to depend necessarily upon the amount of ballots cast for him, but upon what the persons in charge of the ballot boxes say was the result of the election. * * * All our decisions recognize a suit for an office brought in the district court in manner and for the purposes we have stated to be a matter of judicial cognizance, and to be determined by judicial methods. If in the trial of such a cause it becomes necessary to investigate political subjects, such as the ballots of voters, or the conduct of officials conducting elections, this may be done, if the evidence to be produced tends to determine the right in controversy between the parties. One elected to office by the people holds a right to its enjoyment by the highest patent upon which title to property can rest. He cannot be defrauded of his right by the act of ministerial officers in charge of the ballot boxes, and may establish it by proof of the very facts through which he traces his right to its possession. These views are supported not only by reason but are in full accord with the previous decisions of our own state, one of which only will be sufficient to cite."

[5] We also refer to Bell v. Faulkner, supra. It was there held that the case made by the petition was a suit for an office and not a proceeding to contest an election. Bell v. Faulkner cannot be distinguished from the case made by the petitions here. It is therefore held that these cases were suits for an office and the district court had jurisdiction.

[6] Appellee contends that an election contest under the statute is the exclusive remedy in such cases. The courts have held to the contrary. The constitutional amendment and statutory provisions enlarged the jurisdiction of the district court and did not limit its power to try the same question by any other existing mode of procedure. Gray v. State, 92 Tex. 396, 49 S. W. 217; Price v. School Trustees, 192 S. W. 1141; Messer v. Cross, supra.

[7] There remains only to be considered whether the allegations are sufficient to maintain suit for the office. The petition shows that Jones received 189 votes and appellant 159 legal votes; that of the votes received by and counted for Jones were 50 ballots claimed to be illegal because the signature of the presiding judge was not written upon the blank side thereof at the time such ballots were cast, counted, and returned for Jones. Such ballots were illegal and should not have been counted and returned for Jones. Arts. 3001 and 3011, R. S.; Arnold v. Anderson, 41 Tex. Civ. App. 508, 93 S. W. 692; Clark v. Hardison, 40 Tex. Civ. App. 611, 90 S. W. 343; State v. Connor, 86 Tex. 133, 23 S. W. 1103; Brigance v. Horlock, 44 Tex. Civ. App. 277, 97 S. W. 1060. Deducting these 50 ballots from the total counted and returned for Jones would leave a balance of 131 for him. The petition shows that appellant received 159 legal votes, which entitled him to the office.

Reversed and remanded.

WALTHALL, J., not sitting, being absent on committee of judges assisting the Supreme Court.