## BORDER et al. v. ABELL, County Atty.

### No. 10693.

Court of Civil Appeals of Texas. Galveston.

Dec. 2, 1937.

Isaac Garrett and M. S. Munson, Jr., both of Wharton, for appellants.

Thos. H. Abell, of Wharton, and S. C. Cappel, Jr., George P. Willis, Jr., and Donald M. Duson, all of El Campo, for appellee.

GRAVES, Justice.

This statement—approved and adopted by the appellee as being correct—is taken from the appellants' brief:

"This is an election contest, filed under the general statutes governing such cases, that is, chapter 9, title 50, Revised Statutes of 1925, by W. M. Border et al., as duly qualified property tax paying residents of Wharton county, Tex., against Thomas H. Abell, county attorney, to contest the result of a certain election held throughout Wharton county, Tex., on May 1, 1937, at which, among others, the proposition of voting bonds in the amount of $85,000 for the erection, construction, and equipping of a county hospital at El Campo, in Wharton county, Tex., which was denominated 'Proposition No. 1', was voted upon. The returns of said election showed that 'Proposition No. 1' carried by a vote of 937 votes for and 914 votes against. The result of 'Proposition No. 1' was the only one contested in this proceeding.

"The contestants (appellants here) in their second amended grounds of election contest, upon which the case was tried, set up various grounds upon which they contended that the petition, order of election, and the proposition voted upon were illegal and the election therefore void, but a special exception directed to these grounds by contestee (appellee here) was sustained by the court, and they were therefore not considered on their merits. The contestants also alleged and proved that the tax collector of Wharton county failed to furnish to the election judges, or any of them, a certified list, or any list, of the owners of real estate in said county who had rendered the same for taxes, as shown on the tax rolls. It was also alleged that various persons voted for said bond issue who had not paid a poll tax, who owned no property rendered for taxation, and who did not vote in the precinct of their residence, and that the re-

sult of said election was impossible of ascertainment.

"Upon the trial it was proved that 30 of the voters voting for said 'Proposition No. 1' and 14 of the voters voting against said proposition were not qualified voters, and that their votes were illegal and void and should not be counted; it was further proved, after trial amendments had been filed alleging the facts by both parties, that in 9 out of the 23 election precincts of the county the election judges failed to write their signatures on the ballots as required by law.

"The court held that, in the absence of any allegations or proof of fraud or misconduct, or that it in any way affected the result of the election, that the fact that the tax collector failed to furnish the election judges with a certified list of the owners of real property, who had rendered the same for taxation, was immaterial and did not affect the validity of the election. The court also held that the 44 votes cast by illegal voters, as well as the votes cast in the 9 precincts where the ballots were not signed by the judges consisting of 321 votes, should be deducted from the votes cast respectively for and against the proposition, and reached the conclusion that the bond issue carried by a vote of 761 to 725 a clear majority of 36 votes, and rendered judgment for the contestee accordingly, to which judgment, findings, and conclusions the contestants duly excepted and perfected this appeal."

Inveighing on the appeal against the determination so adverse to them below, the appellants in the main contend:

(1) The trial court erred in sustaining the special exception thereto and thereby refusing to consider appellants' averments to the effect that the election was void because the petition and order therefor, as well as the proposition submitted and voted upon therein, were each and all in themselves illegal, hence furnished no proper premises upon which it could be supported.

(2) The election was null and void, because the undisputed evidence showed:

(a) "That the tax collector of Wharton county did not furnish to the election judges, or any of them, in such election a certified list, or any list, of the owners of real estate in said county who have rendered the same for taxes as shown on the tax rolls, as required by law, said election being for the purpose of authorizing the issu-

**1188**

ance of bonds which place a lien upon real estate."

(b) "That all the voters in nine out of a total of twenty-three boxes were deprived of their vote by the failure of the respective election judges of such voting precincts to write their signatures upon the ballots, and under such circumstances it is impossible to ascertain the true result of such election."

(3) The court below should have further declared the election void, "because it is impossible to ascertain whether or not the bond issue received a majority of the votes of the qualified property-tax-payers voting at the election, since the 321 ballots which were not counted by the court for or against the proposition submitted, because they failed to bear the signature of the election judges, should have been counted in estimating the total vote cast, for the purpose of determining the necessary majority."

None of these contentions, it is thought, should be sustained.

■ The first of them raises a question that seems to this court to have been already foreclosed in this state—that is, in a statutory election contest within the purview of cited chapter 9, title 50, article 3041 et seq., of our Revised Statutes, such as this one was, the scope of the court's inquiry is limited to matters pertaining strictly and directly to the election itself, together with happenings on the date thereof, such as the casting and counting of the ballots voted therein, as well as the action and conduct of the officers holding it.   R.S. arts. 3053, 3054, 3069; Norman v. Thompson, 96 Tex. 250, 72 S.W. 62; Turner v. Allen, Tex.Civ.App., 254 S.W. 630; Ladd v. Yett, Tex.Civ.App., 273 S.W. 1006; Warren v. Robinson, Tex.Civ.App., 32 S.W.2d 871.

Since the leading authorities relied upon by appellants for their contrary view on this feature of the cause, such as Dickson v. Strickland, 114 Tex. 176, 265 S.W. 1012; Bickley v. Lands, Tex.Civ.App.; 288 S.W. 514; Kidd v. Truett, 28 Tex.Civ.App. 618, 68 S.W. 310, and Oxford v. Frank, 30 Tex. Civ.App. 343, 70 S.W. 426, have been shown not to rule the situation here presented in the Ladd v. Yett Case cited supra, it is deemed unnecessary to further review them.

It would seem from the opinion of the Supreme Court in the Norman v. Thompson Case, and that of the Beaumont Court of Civil Appeals in Turner v. Allen, both cited supra, that such limitation of the court's province in a purely statutory election like this one was in furtherance of the Legislature's purpose of having it determined in such proceedings whether there had been fraud or misconduct in the holding of the election, as well as whether it had resulted in a fair expression of the will of the voters, and of stopping there. Upon these considerations, the first presentment is overruled.

■ The three further claims for invalidity in the proceedings seem equally untenable; the first of them—grounded on the tax collector's failure to furnish the election judges the lists of real estate owners, as prescribed by art. 2955b, Vernon's Ann. Civ.St.—is satisfactorily answered by this conclusion of law of the learned trial court:

"In the absence of any allegations or proof of fraud or misconduct, or that the failure to comply with the provision of the statute stating that the tax collector shall furnish to the election judges, in an election of this character, a certified list of the owners of real estate in the county, who have rendered the same for taxes, affected the fair result of such election, the failure to so comply with such provision of the law is immaterial and does not affect the validity of the election."

Furthermore, this court entertains some doubt as to the validity of so much of cited article 2955b as provides that the tax collector shall furnish the election judges a certified list of the owners of real estate who have rendered the same for taxes, and that such list of real estate owners shall determine the qualification of the electors to participate in such election, in that it might without warrant deprive the owners of personal property rendered for taxation of the right to vote in such a bond election.   Article 6, section 3a, Texas Constitution; Vernon's Ann.Civ.St. arts. 2955a and 2955b; Campbell v. Wright, Tex.Civ.App., 95 S.W.2d 149.

It will be noted that this statute so limiting this requirement to the owners of real estate does not expressly follow the new constitutional provision adopted November 8 of 1932, that is, section 3a of article 6, in that the qualified voters in such an election were limited to those "who own taxable property in the * * * county * * * and who have duly rendered the same for taxation," and not to those only who owned taxable real estate.

■ As concerns the 321 ballots cast in 9 out of the 23 voting boxes in the county, which the trial court held illegal and void because the election judges in those precincts failed to write their signatures thereon, the litigants here do·not wholly differ —the appellants regarding these unsigned ballots as only irregular, hence susceptible of consideration and of being counted in determining the total number of votes cast in the election, whereas the appellee stands upon the correctness of the trial court's holding that they were all absolutely illegal and void, so could not be counted for any purpose. This court approves the trial court's conclusion of law upon this feature, as follows:

"All of the ballots cast at said election upon which the presiding judge failed to write his signature are illegal and void and should not be counted for any purpose in determining the true result of the election. I find that there were one hundred forty-six of said ballots so illegally cast for the issuance of said bonds and one hundred seventy-five of said ballots so illegally cast against the issuance of said bonds."

These authorities are cited as conclusively supporting the determination just made. R.S. art. 4478; 9 R.C.L. 1121; 9 R.C.L. 1061; R.S. arts. 3010, 3018; Clark v. Hardison, 40 Tex.Civ.App. 611, 90 S.W. 342; Shipman v. Jones, Shipman v. Crow, Tex. Civ.App., 199 S.W. 329; Miller v. Coffee, 118 Tex. 381, 15 S.W.2d 1036; Turner v. Teller, Tex.Civ.App., 275 S.W. 115; Johnston v. Peters, Tex.Civ.App., 260 S.W. 911; Griffin v. Tucker, 51 Tex.Civ.App. 522, 119 S.W. 338.

■ Appellants' last complaint in support of their insistence for the invalidity of the election in toto, that—in the circumstances developed—it was impossible to determine whether or not the bond issue received a majority of the qualified voters, is thus effectively answered, it is thought, in the appellee's brief:

"This case (Shipman v. Jones, Shipman v. Crow, Tex.Civ.App., 199 S.W. 329) is directly in line with the case at bar and Judge Higgins, who wrote the opinion, specifically states that those ballots which did not have the signature of the presiding Judge upon them were illegal and not merely irregular, as contended by appellants herein. Of the 321 ballots which did not have the presiding officer's signature, the trial court, in holding them illegal, deducted the number of those 321 votes, which were cast for the bond issue, to-wit, 146 votes, from the total votes cast for the bond-issue, and further, deducted that number of the 321 votes, to-wit, 175 votes, cast against said bond-issue, from the total number of votes cast against said bond-issue. Appellants complain of this act and say that the 321 votes should have been deducted from the total number of votes cast. The case above cited, Shipman v. Jones, specifically states that· those votes not having the presiding judge's signature should be deducted from the total of the person for whom they were cast; in other words, applying the rule laid down in Shipman v. Jones to our case,· the number of the 321 votes cast for the bond-issue should have been deducted from total votes cast for the bond-issue, and the number of those 321 votes cast against the bond-issue should be deducted from the total· number of votes cast against the bond-issue,· exactly as was done by the honorable trial court in our case."

While the subject is an interesting one, further discussion is foreborne, and since these conclusions require an affirmance of the judgment, that order will be entered.

Affirmed.

PLEASANTS, C. J., absent.