STATE *ex rel*, TOWNSHIP OF DRY RUN v. BOARD OF ASSESS-
MENT OF DRY RUN ARTESIAN WELL *et al.*

1.  Sections 2090-2140, inclusive, Comp. Laws, provide for the location establishment, and construction of artesian wells, and the probate judge is made *ex officio* artesian well commissioner for his county. Section 2097 provides that, before the commissioner takes any action towards locating or establishing any such well. an application shall be filed with him, signed as therein set forth. Section 2116 provides that the proceedings in establishing any such well may be reviewed upon *certiorari*, within a time therein limited, and prescribes the practice in that respect; and further declares that, if no *certiorari* be brought within the time so limited, the well shall be deemed to have been legally established, and its legality shall not thereafter be questioned. Upon an affidavit for writ of *certiorari* to bring up the record of such well commissioner for review, stating that no application, signed as required by law, was presented to or filed with the well commissioner, and that he made his order establishing such well, without such application, and it appearing that no *certiorari* was brought within the time limited as above *held*, that the establishment of the well must be deemed to be legal, and that *certiorari* would not lie to review the action of the well commissioner in establishing the same.

2.  A new law upon the subject of artesian wells took effect July 1, 1889, which provided for the completion of proceedings initiated under the old law, and the further proceedings after the establishment of the well were had under the new law, (Chapter 14, Laws 1889.) Section 14 of this law provides for a board of assessment to apportion and assess the cost of construction of any such well, to be composed of the well commissioner, the chairman of the board of county commissioners, and the county treasurer. Section 18 provides that, if any member of said board is disqualified for causes therein stated, the sheriff shall take the place of such disqualified member, or, if the sheriff is so disqualified, the coroner shall act on said board. From the procuring affidavit of relator it appeared that the well commissioner was so disqualified, and did not act on said board; that the chairman of the board of county commissioners, the county treasurer, and the sheriff were all duly qualified; but that the board which did meet, and assumed to make the assessment complained of, consisted of the county treasurer and coroner only. No reason appearing therefor, *held*, that the county treas-

urer and coroner did not constitute a board of assessment, under the law, and their attempted assessments were void.

3.  Such self-constituted board, having no legal existence, had no functions, judicial or otherwise, and could make no record which could be brought to this court upon *certiorari.*

(Syllabus by the Court.  Argued Feb. 17, 1890.  Opinion filed April 1, 1890.)

Appeal from circuit court Hughes county.    Hon. H. G. FULLER, judge.

The nature of the proceedings and the material facts are fully stated in the opinion.

*Crawford & De Land* for appellant.

*Certiorari* is the appropriate remedy of relator.  He had no plain, speedy and adequate remedy by appeal.  He had no right of appeal at all.  Flint v. City of Fond du Lac, 42 Wis. 295;  Champion v. Board of County Comr's, 41 N. W. 739; Spencer v. Sully County, 33 N. W. 97.

Neither a discretionary or ministerial act can be reviewed on appeal; it must be judicial to support an appeal.  Pierre Water Works v. Hughes County, 37 N. W. 733;  Fulkerson v. Stearns, 1 Pac. 262;  People v. Assessor of Brooklyn, 39 N. Y. 81;  Collins v. Sternberg, 29 Wis. 447;  People v. Overseers, 15 Barb. 386;  Marwood v. Hollister, 2 Selden, 309;  People v. Eldorado, 11 Cal. 170;  People v. Turnpike Co., 3 Johnson's Cases 107.    The acts complained of were *quasi* judicial and not purely ministerial.    Maxwell v. Supervisors, 53 Cal. 392;  People v. Oakland Board of Ed. 54 Cal. 376;  Sinking Fund Cases, 99 U. S. 761.

The acts of an inferior tribunal exercising a general jurisdiction are *coram non judice.*  Where a petition is a prerequisite to the jurisdiction of an inferior tribunal it must show on its face that it conforms to the law.    Dartmouth Bank v. Dist. No. 6, 43 N. W. 822;  Stone v, Mayor of New York, 25 Wend. 165;  Sharp v. Johnson, 4 Hill 97;  Litchfield v. Vernon, 41 N. Y. 135;  Cooley on Taxation, 657.

*L. E. Gaffy, District Attorney,* Hughes county,  *W. C. Fawcett* and *H. R. Horner,* for respondents.

In making an order for the location of a well at a certain

point the artesian well commissioner was performing a ministerial act. Linden v. Almeda county, 45 Cal. 6; Carver v. Chappelle, 37 N. W. 879.

*Certiorari* will not lie to review a ministerial act. It is not the proper proceeding for the reason that it lies only to review proceedings of which the law requires a record to be kept. People v. Bush, 30 Cal. 344; People v. Walters, 68 N. Y. 403. The commissioner is only required to keep a record of the order locating the well. Paulsen v. Ingersoll, 22 N. W, 477. When his jurisdiction depended on the existence of certain facts he was the proper tribunal to determine the existence or non-existence of those facts. People v. Bush, 40 Cal. 344; Perkins v. Hamilton, 60 Cal. 289. The law presumes the board of assessment to be regularly constituted and their acts regular, and the fact that the coroner instead of the sheriff acted upon the board is presumed to be regular and that the sheriff was disqualified. People v. Palmer, 52 N. Y. 87. § 4965 Comp. Laws; Hartwell v. Root, 19 Johns 345; Guy v. Washburn, 23 Cal. 111; Hahn v. Kelly, 34 Cal. 393.

KELLAM, J. Appellant brings this appeal to reverse the order of the circuit court dismissing and setting aside the writ of *certiorari* previously granted by the said court upon the affidavit of Pardon S. Phinney. The object of the writ was to bring before the court, for review, the proceedings of the artesian well commissioner for the county of Hughes, in establishing a certain artesian well in Dry Run township, in said county, and of the board of assessment, in making certain assessments for its construction. Before any return was made in obedience to the writ, respondents appeared, and moved the court to dismiss said writ, for the reasons: (1) Relator has a plain, adequate and speedy remedy by appeal. (2) The acts complained of were purely ministerial in character, and not subject to review by this writ. (3) Relator in its affidavit has stated no adequate cause for the issuance of the writ, in this: that no act in excess of jurisdiction by defendants is shown. The court granted the motion, and made its order dismissing the writ, and from such order the appeal is taken.

Without setting out the procuring affidavit at length, it is sufficient for the purposes of this appeal to say that, after alleging the matters relied upon to constitute the relator a proper and competent party to institute the proceedings, it presents a detailed statement of facts which, fairly abreviated, are as follows: In August, 1887, two certain petitions were presented to said William Stough, then probate judge and *ex officio* artesian well commissioner in and for Hughes county, Dakota, asking for the location and construction of an artesian well in said Dry Run township, under the provisions of Chapter 7, Laws of 1887, being Sections 2090–2140, inclusive, Comp. Laws; that it did not appear, on the face of either of these petitions, that the persons signing the same were qualified as reported by said law, and that, as a matter of fact, neither of said petitions was signed by the requisite number of persons so qualified; that upon said petitions the said well commissioner afterwards made and filed an order of determination locating and establishing a well, and named the same "Dry Run Artesian Well," and on the 30th day of March, 1888, made an order for the letting of the contract for sinking the same. No bids having been received at the time advertised for receiving the same, he, by order, extended such time to June 25th, and again, for the same reason, to August 1st. At this time, August 1st, an order was made that the matter of the construction of said well "be indefinitely continued until the further order of the commissioner; * * *" That "prior to said adjournment, and within the time provided by law, a protest was duly made under the provisions of Section 2123, Comp. Laws, by the resident owners and freeholders of the majority of the property assessed, or to be assessed, for the construction of said well, before the board of county commissioners of said county, and duly filed before said board, against the laying out and construction of said well;" that no special assessments or assessment roll for the years 1887 or 1888 were made or extended; that afterwards, and on the 3d day of July, 1889, no new application having been presented, the said well commissioner made an order, and entered

the same upon the artesian well records of said county, for the completion of said well; that from and after January 1, 1889, Thomas H. Green was the duly elected, qualified, and acting county treasurer of said county, Alfred S. Guthrie its sheriff, and William S. Wells the chairman of its board of commissioners; that on the 25th day of July, 1889, there was a pretended meeting of the board of assessment under Section 14, c. 14, Laws 1889, for the purposes in said section indicated; that all of said officers last named, to-wit, county treasurer, sheriff, and chairman of the board of county commissioners, were then and there qualified to act as members of said board; that there were present at said meeting said well commissioner, Stough, —who was disqualified to act on said board, because the owner of land to be directly assessed for the construction of said well, and who declined to act thereon,—the said treasurer, Green, and C. C. Sprague, the county coroner, and no other; and that said Green, treasurer, and Sprague, coroner, then and there assumed to organize and act as said board of assessment, and did then and there assume as such board, to "make certain pretended county, township, and direct assessments for said well," which assessments are particularly set forth in said affidavit; that said pretended assessment, certified to by said "C. C. Sprague, chairman," was filed in the office of the county clerk of said Hughes county, to be extended on the regular tax books of said county. It will be observed that all of the foregoing proceedings, which culminated and ended in the final order of the well commissioner establishing this well, March 30, 1888, were taken and had under the law of 1887, which law remained in force until July 1, 1889, when Chapter 14, Laws 1889, took effect; and all subsequent proceedings, commencing with the order of July 3, 1889, for the completion of the well, were had under the new law. Upon these facts two main questions are presented—*First*—as to the establishment of the well; and, *second*, as to the assessments for its construction.

As before observed, the first question must be considered and determined under the provisions of the law of 1887. Section 2097, Comp. Laws, being of the law of 1887, provides that,

before the well commissioner takes any action towards establishing any well, there shall be filed with him an application signed by not less than five freeholders, qualified in other respects as therein particularly set forth. The affidavit of relator affirmatively declares that no such application was so filed, because neither of the applications which were filed was signed by the requisite number of qualified persons; and in the disposition of this case the statements of the affidavit must be treated as facts. The order establishing the well was, however, made March 30, 1888. Upon these facts we should have little trouble or hesitation in disposing of the order establishing this well, except for Section 2116. That section provides "that the proceedings in establishing any well shall be subject to review upon *certiorari*, as herein provided. Notice of such *certiorari* shall be served on the commissioner within 10 days after the determination of such commissioner in establishing any well," and then, after prescribing the manner of bringing such *certiorari*, and the practice and judgment of the court upon the hearing of the same, further declares: "If no *certiorari* be brought within the time herein prescribed, the well shall be deemed to have been legally established, and its legality shall not thereafter be questioned in any suit at law or in equity; provided, further. that, when such proceedings are brought, the commissioner shall postpone the letting of contracts and all other proceedings until after the determination of the court."

The language of this statute is comprehensive and positive, and, as it is not claimed that this proceeding or any other was brought within the time therein limited, it is controlling, and we must hold, under it, that all inquiry as to the establishment of the well is now foreclosed and barred. This is emphatically a statute of repose, and while these facts, if properly brought before the court within the time allowed for their review, must have defeated and vacated such order, it was undoubtedly competent for the legislature to limit the time within which such attack might be made, and to declare, as it has, that after the

expiration of such time the legality of the order should be  beyond the reach of question or review.

We think the claim of appellant's counsel that Sections 2115 and 2116—from the latter of which the above quotation is made —are designed to, cover only the matter of assessments, and that the *certiorari* therein provided for can only be brought after such assessments are made, is not sustained by a careful study of this act.   Under Section 2112, the commissioner, upon making his final order establishing the well, proceeds to "give not less than sixty days' notice of the time and place of letting."   Such notice must also state the time and place when and where his assessments may be reviewed, which assessments he must announce at the time and place of such letting, (Section 2115,) and they are "thereupon" subject to review and cor rection.   Within 10 days after this review before the well commissioner any person aggrieved thereby may appeal; but all these proceedings are distinct from and independent of the *certiorari* provided for in the latter part of Section 2116, and must necessarily occur long subsequent to the bringing of the *certiorari*. The *certiorari* must be initiated within 10 days after the order establishing the well. but the announcement of assessments, and their review, cannot be had until at least 60 days after such order establishing the well.   It is very evident that the legislature intended that the legality of the well should be firmly established before any assessments should be made, and so provided that within 10 days from its establishment its legality might be inquired into and determined, upon *certiorari* but, if not so challenged within that time, "its legality should not thereafter be questioned;" and this intention is strongly emphasized by the closing provisions of said Section 2116, "that when such proceedings are brought the commissioner shall postpone the letting of contracts and all other proceedings until after the determination of the court."   But for this statute of limitation the facts herein stated would present the case of an inferior officer assuming to perform an act which he was only authorized to perform after the occurrence of some prerequisite or condition precedent, as in the case of Dartmouth Sav. Bank

v. School Dists., 43 N. W. Rep. 822, cited by appellant's coun-
sel, and of course would have been determined by the same rule
applied by the court to that case; but with this statute, and
controlled by it, the case is one in which the law says that, after
a limited time, the absence of such prerequisite shall not be
shown nor taken advantage of.    The legality of the order of
the well commissioner, establishing the well, is, in our opinion,
fixed and set at rest by the statute.    Before proceeding to con-
sider the matter of assessments, it may not be out of place to
direct the attention of counsel to Section 2114.    This section,
we think, was not referred to in the briefs or arguments of either
side.    While we do not intend to intimate any opinion as to the
effect upon subsequent proceedings of any adjournment or se-
ries of adjournments exceeding in all 40 days, its provisions
may be sufficiently important to justify examination in connec-
tion with further proceedings, which may be undertaken in this
case.

The next question to be examined is, did the board of as-
sessment exceed its jurisdiction in making the assessments set
out in the affidavit upon which this writ was issued?    Section
14, C. 14, Laws 1889, provides for a board of assessment, to be
composed of the chairman of the board of county commissioners,
the county treasurer, and the well commissioner, of which board
the county clerk shall be the clerk; subject however, to the pro-
visions of Section 18 of the same act, which are that none of
such officers shall be qualified to act on said board of assess-
ment, whose lands are to be directly assessed.    In case any
member of such board is disqualified, his place shall be filled
by the sheriff of the county, or in case the sheriff is so disqual-
ified, by the county coroner.    The affidavit upon which this
writ issued states that the well commissioner, Stough, was so
disqualified, and did not sit on said board, but that Wells, chair-
man of the board of county commissioners, and Green, county
treasurer, were not disqualified, and that Guthrie, sheriff, was
qualified; that on the 25th day of July there was a meeting of
persons claiming to be such board of assessment, and that such
board was then and there composed of Green, county treasurer

and C. C. Sprague, county coroner; and that as such board they proceeded to make such township and district assessments for the construction of the well in question.    For the purposes of this motion, it is conceded by both sides that the relator's affidavit, upon which this writ originally issued, must be taken as true, and as correctly showing to the court the facts as they existed at the time; and the conclusions stated in this opinion must be understood to be based upon the recital of facts in such affidavit.    The facts, then, in respect to the composition of the board of assessment, are that the county treasurer, chairman of the board of county commissioners, and the sheriff were each duly qualified to act as members of said board, and that the well commissioner was disqualified.    This being so, the law is very plain as to who should constitute such board.    The coroner could only take the place of the sheriff, when the sheriff was disqualified    Respondent's counsel says that the fact that the coroner was called in, and did act, raises a presumption, at least, that the facts justified it; that is, a presumption of regularity.    It is doubtful if this would be the law in any case like this, but certainly not here, as against the undisputed assertion of relator's affidavit,—equivalent upon this argument to a proved fact—that the sheriff was qualified, for the plain logic and provision of the law is that, if the sheriff was qualified, the coroner was not. The only board of assessment, then, authorized by the law, upon these facts, was a board composed of the county treasurer, the chairman of the board of county commissioners, and the county sheriff.    The board that assumed to make the assessments complained of, and whose acts this writ is brought to review, was made up of the county treasurer and the county coroner.    This was not the board to which the law committed the duty of making these assessments.    It was not a board at all. The petition does not present the case of a legally constituted board acting in excess of authority, but rather that of a self constituted board or body of men, with no legal authority in the premises, assuming to do an act which the law had imposed upon a different body.    This not being a board either authorized, created, or recognized by the law, it had no functions, ju-

dicial or otherwise; and, as it had no. power to do any act, it had no authority to make any record. Upon the facts recited in the affidavit, their act in making such assessments was absolutely nugatory and void, and imposed no liability, either upon the lands assessed or their owners. The pretended act of assessment was void, not because the board exceeded its jurisdiction in making such assessments, but because there was no board. Nobody is legally responsible for it, and nobody is legally bound by it. It is not the act of any board whose conduct is subject to review in this proceeding. It was not a board having any legal existence, and it could do no legal act, nor could it make any record of its acts. Its attempted assessment was void, and its record a blank, and *certiorari* will not lie to review such proceedings. If we are correct in these views, the court below was right in dismissing the writ. And, besides the attempted assessments being void upon the showing of relator, he had a plain, speedy and adequate remedy against their collection. The order appealed from is affirmed; all the judges concurring.