(91 N. W. Rep. 950.)

STATE *ex rel* P. E. BYRNE *vs.* PETER WILCOX, *et al.*

**Elections—Creation of Precincts—Irregularities.**

This is an application of P. E. Byrne, an elector of the city of Bismarck, and a candidate for the office of county auditor of the county of Burleigh, for leave to file an information in this court as a foundation for invoking the original jurisdiction of this court by issuing the writ of injunction. The attorney general of the state has indorsed upon the information his disapproval of the application. The defendant Moorhouse is county auditor of the county of Burleigh, and the other defendants were named as in-

spectors of elections by a resolution adopted by the board of county commissioners of said county on the 2d day of September, 1902, to act as inspectors in certain election precincts within the city of Bismarck, which precincts were established, or attempted to be, by said commissioners, by a resolution adopted by them on said date. The writ is sought to enjoin the defendants from taking any action in or about the holding of an election in the election precincts so created. It is urged in behalf of the petitioner that the precincts so attempted to be created by the commissioners are illegal, and have no warrant in law, for the reasons: First, that said precincts do not conform to the lines of the several wards of the city of Bismarck; and, second, that the statute itself creates the voting precincts within the city, and makes each ward of the city a voting precinct; and, finally, that in no event are the commissioners authorized to change or alter the boundaries of any voting precinct within the city, inasmuch as authority to do this is expressly conferred by statute upon the city council. The petition omits to charge that the commissioners acted fraudulently in so attempting to create the election precincts, or that the defendants, or any of them, have or will act fraudulently in the matter of holding the contemplated election in said precincts; nor does the petition allege in terms that any candidate will be prejudiced, or that any elector will be prevented from casting a free ballot, by the defendants, if the contemplated election is held. For the purposes of this proceeding, and for reasons set out in the opinion, it is *held,* that the contemplated election, if permitted, will, under the facts stated in the petition, be merely irregular, and will not be absolutely illegal and void.

### Supreme Court Without Jurisdiction upon Facts Disclosed.

*Held,* further, that the facts presented by this petition do not suffice to invoke the original jurisdiction of this court in defense of either the prerogatives of the state, its franchises, or the liberties of its people.

### Leave to File Information Necessary.

*Held,* further, where this court, upon any of the grounds enumerated, will take original jurisdiction, leave to file an inormation should be applied for by the attorney general of the state on behalf of the state; and that the cases are few and quite exceptional in which this court will, in behalf of the state, assume original jurisdiction at the instance of a private citizen.

### Petition Quashed.

*Held,* further, that this case is not a case in which the original jurisdiction of this court can be put in motion by a private citizen. The motion to quash the petition is granted.

Application by the state on relation of P. E. Byrne for an injunction against Peter Wilcox and others. Writ denied.

*Newton & Smith,* for the application.

*Cochrane & Corliss, Boucher, Philbrick & Cochrane,* and *E. S. Allen* for defendants.

WALLIN, C. J. In this proceeding, on the petition of P. E. Byrne, a chambers order was issued by one of the judges of this court, directing the defendants to show cause before this court at Bismarck.

on the 7th day of October, 1902, why the relief sought by the petitioner should not be granted. The order having been served, the matter came on to be heard before the court assembled at Bismarck. At the hearing Messrs. Newton & Smith appeared for the petitioner in support of the petition and Messrs. Cochrane & Corliss appeared in behalf of the defendants. At the hearing before the court, counsel for defendants, appearing specially, filed a motion to quash the proceeding. The grounds of the motion which we deem to be most important are stated as follows: "(2) The consent of the attorney general has been refused, and the case is one where the court should decline to take jurisdiction unless the attorney general initiates the proceedings. (3) The case is not one in which the supreme court can take original jurisdiction." "(6) No sufficient reason is shown why the application is not made to the district court."

In passing upon this motion it becomes necessary to make particular reference to the petition, which contains a statement of the facts upon which the petitioner relies as a foundation for relief, and also a statement of the particular relief which is sought. Only the substance of the petition will be given, except where quotations are deemed necessary to a proper understanding of the case. It states in effect, that the relator is a citizen of Burleigh county, in this state, and is an elector of the Fourth ward of the city of Bismarck, which city is situated within Burleigh county, and is, and since September 20, 1900, has been, incorporated as a city under the general laws of the state governing cities, embraced in chapter 28 of the Political Code; and that petitioner is the nominee of the Independent and Democratic party of said Burleigh county for the office of county auditor of said county, to be voted for at the general election to be held on the first Tuesday of November, 1902. The petition further alleges, after giving a description of the territory embraced within the city, that the city contains four wards, and that it has been divided into four wards for a period of more than 10 years, and each of said wards is described in the petition by its metes and bounds. The petition gives the total of the votes cast in each of said wards at the city election held therein in 1901 and in 1902, showing that less than 200 votes were cast in each of said wards at said elections, respectively. It further appears that each of said wards has two regularly elected and qualified aldermen. The petition further states that at all elections hitherto held for state and county purposes within said city the city has been divided into three election precincts by the county commissioners, and each of said precincts is particularly described by metes and bounds with reference to township and ward lines. The particular acts complained of are set forth as follows: "That on or about the 2d day of September, 1902, the board of county commissioners, then convened as such board, among other things by them done, adopted and spread upon its records the following resolution: 'Whereas, it appears that, owing to the increase in the number of votes in certain precincts of the county, and that certain

changes should be made in precincts heretofore made, and that new ones should be established: Therefore, be it resolved, that precinct No. 1 be established as follows: All that portion of the city of Bismarck lying west of the center line of Fourth street and south of the township line running between township 138 and 139. That precinct No. 2 be established as follows: All that portion of the city of Bismarck lying between the center line of Fourth street and the center line of Seventh street and south of the township line running between township 138 and 139. That precinct No. 31 be established as follows: All that portion of the city of Bismarck lying east of the center line of Seventh street and south of the township line running between township 138 and 139. That precinct No. 30 be established as follows: To consist of township 141, range 79. That precinct No. 32 shall be established as follows: Shall consist of township 141, range 78. That, except with the change of precincts No. 1, 2, and 30, and the establishing of the precincts of the same number as above set forth, and the establishing of the precincts No. 31 and 32, there is no change made in the voting precincts hereinbefore established.' That at said time the said board of county commissioners undertook and then and there named and appointed certain persons as inspectors of elections for the said various precincts so undertaken to be established for the city of Bismarck by it, as follows: For said precinct No. 1, Peter Wilcox; for said precinct No. 2, Frank Donnelly; for said precinct No. 31, Richard H. Penwarden; and for said precinct No. 12, or High School precinct, C. A. Burton. That the said persons so attempted to be appointed as inspectors of elections for the said several precincts, as hereinbefore shown, so attempted to be established in said city of Bismarck by said board of county commissioners, intend to act as such inspectors, and in such pretended precincts, so attempted to be established, at the general election next to be held in the state of North Dakota and in said Burleigh county and said city of Bismarck on the first Tuesday of November, 1902." The petition likewise avers, in substance, that, besides two members of congress, there are to be elected at said election the several state officers and the county officers of said county of Burleigh. It is further alleged, in effect, that each of the four wards of the city is a legally established ward, and that, as such, each ward constitutes an election district, and that in said city each ward constitutes an election precinct under the statute, for the reason that none of said wards contain as many as 300 electors. The petition further alleges, in substance, that the county commissioners of Burleigh county are wholly devoid of lawful authority, and were, when the resolution above set out was attempted to be adopted by said board, without lawful authority to establish or to alter any election precincts within said city of Bismarck, and were equally without authority to appoint the persons above named as inspectors of any election precincts within said city; and the said persons named and attempted to be appointed by said resolution of the board were and

are wholly without lawful authority to act as inspectors in the said election precincts so attempted to be established. Upon this showing of facts by the petition the relator asks, in substance, for the following relief in this court: First. An adjudication by this court declaring said resolution of the board of county commissioners to be "illegal and void." Second. That an injunction be issued enjoining the several persons named in said resolution as election inspectors from acting or attempting to act as such election inspectors within the city in any of the election precincts attempted to be established or created by the terms of said resolution of the commissioners. Third. For an order restraining and enjoining the defendant W. S. Moorhouse, as county auditor of Burleigh county, from recognizing either or any of the election precincts attempted to be established by said resolution of the commissioners, and restraining and enjoining the said Moorhouse from preparing any ballots to be used by the electors of the city of Bismarck with any reference to said election precincts so attempted to be created, enlarged, or diminished by said resolution of the commissioners. The record discloses the additional fact that the petitioner, before presenting his said petition to a member of this court as a basis for an order to show cause, exhibited the petition to the Honorable O. D. Comstock, attorney general of this state, and requested that official to join in the proceeding and co-operate with the petitioner in his application to this court for said injunctional relief. The attorney general expressly refused to comply with the request of the petitioner, and, as manifesting his official attitude with respect to this proceeding, the attorney general caused to be indorsed upon said petition a certain statement, to which he affixed his official signature, which statement is as follows: "Upon due consideration of the matters and facts set forth in the within petition of P. E. Byrne, I hereby disapprove the same, and refuse to join-in the motion that it be filed, and the writ therein asked for issued."

We think this statement of the facts will suffice as a basis for a consideration of the preliminary motion to quash the proceeding, and to the merits of this motion we will now give attention. The second ground of the motion is as follows: "The consent of the attorney general has been refused, and the case is one where the court should decline to take jurisdiction unless the attorney general initiates the proceeding." This ground of the motion, by its terms, simply asserts that the case is one in which the court should decline to take jurisdiction. Nevertheless, the motion necessitates a decision of the question presented. To determine this question the court is compelled to consider the case with respect to the procedure in this court in cases of this character. For this purpose we must consider the relief sought, and the query is, what is the essential nature of the relief sought? First, do the facts stated or the relief sought call for any relief which is peculiar to the petitioner as an elector or as a candidate for office? We have examined the facts

alleged with care, and fail to find in the petition a single averment of fact which would entitle the petitioner to any injunctional relief, which, if granted, would not redound to the benefit of all of the electors and to all the candidates who are referred to at length in the petition. On the other hand, it is entirely clear that this petitioner is seeking by this proceeding to annul certain resolutions of the county commissioners of Burleigh county, claimed to be illegal, and to enjoin certain acts of the defendants which are contemplated, and likewise claimed to be illegal, and which acts, if not prevented, will as is claimed, so operate as to affect the political rights and privileges of the petitioner only in common with those of all other candidates and electors referred to in the petition. It therefore appears that the petitioner has volunteered by this proceeding to become the champion of political rights, privileges, and franchises which are common rights, and are not such as are at all peculiar to the petitioner. Nor do counsel for the petitioner claim otherwise. The fact that the petitioner, as shown, has made application in this proceeding to the law officer of the state, the attorney general, clearly shows that counsel for the petitioner understand that the petitioner is in the attitude of a champion of public rights, and that he does not appear in this court asking relief as a private suitor. If, indeed, it were true that petitioner is seeking the prevention of merely private wrongs, he would then concededly be in the wrong forum. This court, as it has frequently held, is not the proper forum in which to institute original proceedings for the protection of merely private rights, unless this is done in aid of the appellate jurisdiction of this court, or with a view to the exercise of the superintending power of this court over inferior courts. See the late case of *Elevator Co.* v. *White,* (N. D.) 90 N. W. Rep. 12, and cases cited. It therefore becomes pertinent to inquire by what authority a private citizen, and hence a person not expressly required by law to redress or prevent wrongs of a public and general nature, comes into this court, and invokes its original jurisdiction, and demands that this court issue its prerogative writ of injunction to prevent the commission of certain acts which are threatened, and which are alleged to be illegal, and which, if allowed to proceed, will, it is claimed, operate as a wrong done against the elective franchise of all the people of the state.

In this jurisdiction it is well settled that certain writs enumerated in the constitution of the state, and whereby original jurisdiction is intended to be conferred upon the supreme court, are to be employed as strictly prerogative writs, and are to be invoked only in a limited class of cases, viz., where the sovereignty of the state is directly, and not remotely, involved, or where it becomes necessary to invoke the original jurisdiction of this court in defense of the prerogatives or franchises of the state or in defense of the liberties of its people; but in all other litigation jurisdiction must be initiated in the other courts of the state. Hence, as we have held, it is sound

practice in this class of cases for the attorney general, as the chosen guardian of public interests, to move in this court for the issuance of prerogative writs in behalf of the state; and this for the obvious reason that he is the officer expressly clothed with authority to assert the rights of the state in the courts, and to defend its franchises and prerogatives, and the liberties of its people. This matter was considered in the first case in which this question of practice arose in this state. See *State* v. *Nelson Co.,* 1 N. D. 88, 101, 45 N. W. Rep. 38, 8 L. R. A. 283, 26 Am. St. Rep. 609, in which this language was used: "Except in cases of habeas corpus, leave to file an information must be obtained from the attorney general. When the information makes out a prima facie case, the writ will issue only in cases publici juris, and those affecting the sovereignty of the state, its franchises and prerogatives, or the liberties of its people. In such cases the court will judge for itself whether the wrong complained of is one which demands the interposition of this court." In the case cited the subject-matter involved the interests of every taxpayer of Nelson county. Nevertheless the court ruled that the exigency of the case did not demand the issuance of a prerogative writ out of this court, and the writ was refused. As has been seen, in the case at bar, the prerogative writ of injunction has not been applied for by the attorney general, and that officer expressly disapproves of this proceeding. This raises the question whether such writs can lawfully issue out of this court in any case against the advice of the attorney general. To this question we are constrained to give an affirmative answer. This court reserves the right to exercise judicial discretion in all cases where prerogative writs are asked for, and will issue and refuse to issue the writs at its official discretion, and according to the exigencies of cases. Cases may possibly arise when this court, for the protection of grave public interests, may deem it to be its duty to override the express wishes of the attorney general with respect to assuming original jurisdiction. See *State* v. *Cunningham,* 83 Wis. 90, 53 N. W. Rep. 35, 17 L. R. A. 145, 35 Am. St. Rep. 27. But we think it is generally quite safe to assume that the attorney general will co-operate in procuring the issuance of prerogative writs in the exceptional cases where public interests are of such gravity as to demand that this court should take original jurisdiction. In all cases where questions of merely public right are concerned, the advice of the law officer of the state upon the question of instituting judicial proceedings to protect such rights has always carried great weight in the courts, and must continue to do so. The following cases from Minnesota will illustrate this important rule: *In re Barnum,* 8 N. W. Rep. 375, 38 Am. Rep. 304; *State* v. *Tracy,* 51 N. W. Rep. 613. The former of these cases was a quo warranto proceeding to oust the respondent from a public office. The information was filed by one Barnum as relator, and filed without the consent of the attorney general of the state. The supreme court, after ruling that the relator had no private interest

in the matter which was peculiar to himself, dismissed the proceeding upon the express ground that the right to file the information was vested in the attorney general in such cases, and that a private individual was without authority to initiate the proceedings. The other case was a proceeding in the supreme court, also in the nature of quo warranto, to test the validity of the incorporation of a village. The application was indorsed with the approval of the attorney general, but that officer did not appear in court, and the case was not prosecuted by him or at his instance. The court ruled that the approval of the attorney general in that case was merely formal, and that such approval was not enough, and for this reason the proceeding was dismissed; citing *People* v. *North Chicago Ry. Co.*, 88 Ill. 537. In the leading case of *Attorney General* v. *Chicago, M. & St. P. R. R. Co.*, 35 Wis. 427, Chief Justice Ryan, speaking for the court, uses this language: "The prerogative writs proper can issue only at the suit of the state, or the attorney general in the right of the state, and so it must be with the writ of injunction in its use as a quasi prerogative writ." But, as has been suggested, it is our opinion that cases may arise where this court, in the discharge of its duties, may deem it proper and necessary to disregard either the approval or the disapproval of the attorney general in a case where leave is asked to file an information in this court as a basis of original jurisdiction. But upon the case presented by the petition we are entirely clear that general rule of practice should be upheld, and the advice of the attorney general against issuing the writ should be followed by this court. The official advice is to the effect that the case presented as a matter of law does not directly involve the sovereign rights or franchises of the state, or its privileges, or the liberties of the people. In our judgment, this advice is fully justified by the facts. Just here it becomes convenient to cite an excerpt from the brief of counsel for the petitioner. Counsel say: "Clearly, this court, in the exercise of its original jurisdiction under a prerogative writ, cannot take cognizance of a matter of merely private concern. * * * The matter involved is obviously not of such nature." Counsel proceed to argue that the case is one of public concern, because the subject-matter involved has reference to the important matter of electing not merely the county officers of Burleigh county, but all state officers and members of the lower branch of congress as well; and in this connection counsel say that any elector has the requisite interest to entitle him to assume the championship of the state and of all the public interests involved in the subject-matter. In support of this postulate counsel cite the instructive case of *State* v. *Cunningham*, (Wis.) 51 N. W. Rep. 724, 15 L. R. A. 561. That case is wide of the mark here. That was a case brought by the attorney general of the state upon the relation of one of the counties of the state, represented by its district attorney; and, the case being one strictly publici juris, the court held that no private relator was necessary, and hence the want of interest

in the private party who, it seems, verified the complaint, was wholy immaterial. The case cited was brought in the supreme court of the state of Wisconsin, and the attorney general asked that the secretary of the state be enjoined from sending out certain notices of election. The relief was granted on the ground that the election in question, if held, would be in pursuance of the provisions of an unconstitutional law, whereby the entire body of voters would be denied political rights expressly safeguarded by certain mandatory provisions of the organic law, which provisions, as was held, had been directly violated in the enactment of the statute under which the election was to be held, if the notices of election were given out. The facts of the case cited are strikingly dissimilar to those of the case at bar. In the case cited the right of the people of the entire state to representation in the legislative assembly in the manner and to the extent provided by the constitution was violated and disregarded by the political gerrymander embraced in the statute which was declared to be unconstitutional by the court. The right of the whole people to be represented in manner and form and to the extent secured by the state constitution was directly at stake in the controversy, and hence the case involved the liberties of the people in the broadest sense of that term. In such a case, if any could ever arise, it would be proper, under the constitution of the state of Wisconsin, and of this state, for the supreme court of the state to accept original jurisdiction; and this was done in the case cited. The transcendent importance of the facts of the Wisconsin case, in view of practical consequences impending to the people, could not well be overstated. In its opinion the court said, in effect, that the matter was of such supreme importance that it was meet that the court should put forth its original prerogative jurisdiction to "shield the sovereignty of the state itself from violation." The court further held that the right of representation, as secured by the state constitution, was struck down by the legislation complained of, and that the enactment imperiled the liberties of the people, within the meaning of that phrase as used by Chief Justice Ryan in *Re Pierce,* 44 Wis. 431, 443.

But mark the contrast between the facts presented in *State* v. *Cunningham* and those brought to our attention in this case. We have seen that the commissioners of Burleigh county, by a resolution placed upon their records, have created or attempted to create certain voting precincts, four in number, within the city of Bismarck, and that such prcincts are not coincident with the boundaries of the various wards of the city, but, on the contrary, the precinct lines overlap the boundaries of the different wards of the city. But the further fact appears that more than 10 years prior to the adoption of the said resolution the commissioners had divided the city into three voting precincts, which precincts, like those com-

plained of, did not correspond to ward lines, but did overlap and run into different wards. All general elections held during the decade last past have been held in the three election precincts above mentioned, and we look in vain for an averment or a suggestion in the petition showing or tending to show that the elections held in said precincts during said decade were set aside or held invalid on account of the fact that said three precincts overlap, or did not correspond to the ward lines of the city. Counsel make no such claim. Nevertheless, if the precincts here complained of, four in number, are illegal precincts, it is because the same were established by the commissioners, and do not, in their boundaries, correspond with the lines of the city's wards. This is true of the last group of voting places as created by the commissioners, and was equally true of the former group. But, as has been said, nothing appears in the petition tending to show that a single candidate was ever, in fact, defeated, or that a single elector has been deprived of his vote, as a result of said grouping of election precincts by the commissioners. But counsel claim that the original group of voting places was in fact illegal, and that those in question are likewise unauthorized and illegal. In support of this contention counsel cite section 2252 of the Revised Codes of 1899. Upon the facts shown, counsel, construing said section, claim, and very forcibly argue, that each ward in the city of Bismarck is itself an election precinct, and one created by the very terms of the statute; and further argue with equal force that, if any new or different voting precincts are at any time necessary within the city, that direct authority to create such new precincts is vested by the statute in the city council, and hence the council alone has authority to act in such contingencies.

But we will not amplify upon the views of petitioner's counsel, for the reason that this court has reached the conclusion that for all purposes of this case the court will assume (without attempting to decide the point) that the views of counsel upon the construction of said section of the statute are correct, and that voting precincts within the city of Bismarck, upon the facts stated in the petition, are measured by ward lines, and this by the very terms of section 2252, supra. But while the case will be decided upon this assumption, it is but just to counsel representing the defense to state their contention also. They contend that the creation of the four precincts in question was necessary, or at least proper, for reasons which are practical; and, further, that such action of the commissioners has legal warrant in the statute. The practical considerations are stated in the brief for the defense as follows: "The action of the county commissioners in creating the precincts was legal, for it is impossible literally to comply with the statute declaring each ward in the city a different election precinct. Because of the fact that a portion of the city lies in the First county commissioner district and the other portion in the Second county commissioner district, it is

not practicable to have each ward distinct, for the reason that the First, Second and Third wards lie each on both sides of the county commissioner district line. If each ward was to constitute an election precinct, it would be necessary in the First, Second, and Third wards to have two ballot boxes, in one of which all persons living in that part of the ward south of the line would vote for the county commissioner of that district, and in the other one all persons living north of that line would vote for the county commissioner in the other district. As the ballot is an entirety, and cannot be separated into different parts, the ballots of all persons north of the line would have to be placed in one box, and all persons south of the line in the other box. The statute plainly contemplates that there should be but one ballot box in each voting precinct, except that there should be a separate ballot box for the sole purpose of receiving the votes of women. Sections 520, 522, Rev. Codes. Another complication is that the ballots sent to these three precincts would have to have on them the names of the two different sets of candidates for county commissioners,—a portion of the ballots having the names of the candidates for the Second district, and the other portion for the names of the candidates for the First district. Again, who is to decide, and how can the decision be made, touching the persons who shall vote the one ballot and who shall vote the other, and who is to decide in which of the two ballot boxes the ballots are to be placed?" As to the legal authority of the commissioners to create the precincts in question, counsel say: "It is perfectly plain from the provisions of section 481 of the Revised Codes that the spirit of the law, and, indeed, the words of the law, requires in a case such as this that that portion of the city located in the First commissioner district should be made a voting precinct by itself, and that, inasmuch as the balance of the city cannot be laid out into precincts by ward, the county commissioners must use sound judgment in determining how the precinct shall be created." However, we shall not attempt in the present case to analyze or construe the provisions of section 481 of the Revised Codes, cited by counsel for the defendants, and shall refrain from so doing because, as will be hereafter shown, this court will decline to assume original jurisdiction in this case, and will leave an adjudication of the very important questions relating to the merits of the petition to be determined in due course by proceedings to be instituted in the district court, which tribunal possesses undoubted original jurisdiction in this and all similar cases.

Reverting to the statement of facts as set out in the petition, it becomes necessary, in disposing of the case, to particularly mention certain facts which are omitted from the petition. First. The petition embraces no charge of fraud against either the county commissioners who adopted the resolution creating the precincts complained of, nor against the inspectors of elections or the county auditor, who are made defendants in this proceeding. In other words, the petition omits to allege that any actual fraud has been

committed, or that any actual fraud is threatened or contemplated, by the defendants. It is further true, and, we think, important, that the petition omits to allege in terms that if the defendants, the inspectors of elections, shall, pursuant to the authority contained in said resolution of the commissioners, proceed to open the polls and hold an election within the city of Bismarck, it will follow as a result of such action that any elector of the city will be deprived of the right to vote, or that the interests of any candidate for office will be injuriously affected thereby, or that any elector or any candidate will be subjected to any inconvenience or disadvantage as a result of holding such contemplated election in said precincts. It follows that this court cannot, in the absence of specific averments to that effect, indulge the presumption that the rights of either the voters or candidates for office in question are in any jeopardy in the premises, unless such an inference is necessary to be drawn from the facts which are alleged in the petition. But it is substantially alleged, and this court will assume, for the purpose of disposing of the motion to quash, that the precincts attempted to be created by the recent action of the county board were created without legal authority, and are illegal precincts, and, consequently, that the election sought to be enjoined in such precincts will, if permitted to be held, be an irregular election. Conceding this, the question is presented whether such irregular election, if held, will be so far vitiated by its illegality that, in the event of a contest, the lawful voters will lose their votes, and the election itself be set aside by a court of competent jurisdiction. It is our opinion that no such inference can be drawn from the facts set forth in the petition. Upon the argument counsel for the petitioner were requested to point to any statutory provision or decided case which would warrant a court in annulling the election for illegality if the same should be held within the disputed precincts. In response to this request counsel did not cite any authority to this court upon which any such decision could be sustained. On the contrary, counsel for petitioner content themselves by declaring that the precincts in question are illegal and ultra vires, and that, for this reason alone, this court should assume original jurisdiction, and by its prerogative writ enjoin the inspectors from holding the election contemplated, and which they were appointed to hold. It is true that counsel in their brief put a supposititious case, under which they claim that electors may be disfranchised. They say a voter living in a ward of the city might remove to another residence in the same ward, and that in such case the voter would be deprived of his voting privilege because a period of 90 days would not elapse between the date of the resolution creating the precincts in question and the date of the general election. The petition is silent as to any such state of facts, but, if any such case exists in the city, it is our opinion that the voter would not be disfranchised. A voter who has not removed from a voting precinct cannot be disfranchised by the action of officials who change the

boundaries of precincts, whether such officials act with or without authority. The constitutional right to vote cannot be thus defeated. *Peard* v. *State,* 34 Neb. 373, 51 N. W. Rep. 828; *Duncan* v. *Shenk,* 109 Ind. 26, 9 N. E. Rep. 690.

Finally, we hold, for the purposes of the motion under consideration, that the proposed election in the precincts in dispute, if actually held, will not be an invalid and wholly void election, but will be merely an irregular election, and one which, in our opinion, cannot so operate as to have any injurious effect upon any substantial rights of voters or of candidates. It is elementary that mere irregularities in conducting an election which is fairly conducted, and which do not defeat or tend to defeat an expression of the popular will at the polls, will not so operate as to vitiate an election. To this rule there is an important exception. Where the statute in terms declares or necessarily implies that any particular act or omission shall defeat an election, the same is construed as a mandatory statute, and every such statute is required to be enforceable strictly in accordance with its terms. In the case of *Perry* v. *Hackney,* 90 N. W. Rep. 483, this court pointed out in the light of authority the distinction between requirements of the election statute of this state which are mandatory and other requirements which are merely directory, and this court then said, which is strictly in point here, referring to an admitted disregard the terms of the election law on the part of the precinct officers: "Courts justly consider the chief purpose of such laws, namely, the obtaining of a fair election and an honest return, as paramount in importance to the minor requirements which prescribe the formal steps to reach the end; and, in order not to defeat the main design, are frequently led to ignore such innocent irregularities of election officers as are free of fraud, and have not interfered with a full and fair expression of the voter's choice." In the case at bar no acts of fraud are charged, and no claim is made that the statute anywhere in terms or in effect declares that any or all of the irregularities complained of will defeat an election. It follows that no such result need be anticipated. On the other hand, the cases cited below are squarely in point to the effect that the particular irregularities complained of will not operate to defeat an election. *Davis* v. *State,* 75 Tex. 420, 12 S. W. Rep. 957; *Bell* v. *Faulkner,* 84 Tex. 187, 19 S. W. Rep. 480.

It must follow, therefore, that no results which are important or which can possibly affect the state, its prerogatives, or its franchises, or the liberties of the people, can be anticipated as a result of holding the election which is sought to be enjoined by this proceeding. Under such circumstances this court, under the established rules of procedure, cannot put forth its original jurisdiction by using its prerogative writ of injunction. The mere fact that illegal action is anticipated is not enough to warrant the issuing of any prerogative writ. True, this court has taken original jurisdiction in *State* v. *Lavik,* 9 N. D. 461, 83 N. W. Rep. 914, and in

other cases of a similar nature arising under the election laws of the state. But in the cases referred to the right of the masses of voters to vote for the regular nominees of their party was directly and vitally involved. Nothing at all similar is presented in this proceeding, and hence these cases are not in point upon the question of jurisdiction.

Leave to file the information must be denied, and the proceeding will be dismissed. All the judges concurring.