THE STATE OF NORTH DAKOTA EX REL. ANDREW MILL-ER, Attorney General of the State of North Dakota, v. ALEXANDER MILLER, Fritz Giffey, Ed. Hanlon, M. F. Minehan, J. J. Behles, F. E. Wright, and Herbert F. O'Hare.

(131 N. W. 282.)

**Supreme Court — Original Jurisdiction — Organization of New Counties.**

1. The supreme court, in the exercise of its original jurisdiction, will, under the facts alleged in the petition, and on the application of the attorney general in the name of the state, issue its prerogative writ to enjoin an alleged new county and those assuming to act as its officers, from exercising jurisdiction over the territory embraced within such new county, until the district court, in which is pending a proceeding to determine the validity of the election at which the proposition was submitted for the organization of such county, has finally adjudicated such question.

**Counties — Creation of New Counties.**

2. The issue as to the validity of such election having been duly submitted to the courts for adjudication, it is a legal fraud upon the people who are interested in defeating the organization of such proposed new county, and who are consequently the real parties in interest, for the county auditor, a mere nominal party, to end such litigation in effect by the issuance of his certificate to the secretary of state as provided by § 2330, Rev. Code 1905, his right to issue such certificate being dependent upon the validity of such election.

**County Division.**

3. Certain language in the opinion in State ex rel. Minehan v. Meyers, 19 N. D. 804, 124 N. W. 701, wherein it was held that a four weeks' publication of notice of the submission of a county division proposition is essential, was inadvertently used, and the same is disapproved.

Opinion filed March 17, 1911.

Application for injunction by the State on the relation of Andrew Miller, Attorney General, against Alexander Miller and others. On motion to quash the order to show cause.

Motion denied.

*Andrew Miller,* Attorney General, *J. E. Nelson,* State's Attorney, *W. P. Costello,* and *Engerud, Holt, & Frame,* of counsel, for plaintiff.

*Herbert F. O'Hare, George A. Bangs,* and *George R. Robbins,* for defendants.

FISK, J. On February 18th the attorney general, in the name of the state, filed in this court a petition praying for the issuance by this court of its prerogative writ of injunction restraining and enjoining defendants, who claim to be duly appointed and qualified officers of the alleged new county of Stevenson, from proceeding or attempting to proceed in the organization of such alleged new county, and from in any manner hindering, preventing, or interfering with the exercise by McLean county and its tribunals and officers, of jurisdiction over the territory, inhabitants, and property within the boundaries of the pretended new county aforesaid.

On filing such petition, an order was issued requiring defendants to show cause, if any there be, why the prayer of such petition should not be granted, and in such order defendants were restrained from committing any of the acts sought to be enjoined during the pendency of such proceedings. On the return of such order to show cause, defendants appeared and moved to quash such order to show cause upon the grounds: (1) That the facts set forth in the petition do not afford ground for the exercise by this court of its original jurisdiction; (2) that the facts set forth therein are insufficient to afford equitable relief; (3) that there is no equity in such petition; and (4) that the facts set forth are insufficient to justify the issuance by this court of its prerogative writ of injunction.

The facts alleged in such petition being admitted for the purpose of determining such motion to quash, we deem it advisable to set forth such petition *in extenso,* that a full understanding thereof may be had. Omitting formal parts and the prayer for relief, such petition is as follows:

"Comes now Andrew Miller, the attorney general of the state of North Dakota, and respectfully shows to the court and alleges:

I.

"That he is the duly elected, qualified, and acting attorney general of said state, and brings this action in the name of said state and in its behalf.

## II.

"That some time prior, to November, 1908, general election in this state, there was presented to the board of county commissioners of the county of McLean a petition for the submission to the voters of said county at said 1908 general election of the question of changing the boundaries of McLean county by segregating and creating out of part of said county a new county, to be known as Stevenson, the boundaries of which are specifically set forth and described in the copy of the ballot used at said election, which is hereto attached and marked 'Exhibit A;' the said Stevenson county proposition being thereon set forth at the top of the said 'Exhibit A,' and is hereby referred to for the sake of brevity.

"That the prayer of said petition was granted by said board of county commissioners, and thereafter there was prepared by the county auditor of said county a ballot in the form of 'Exhibit A' hereto attached, and the same was furnished to each of the voting precincts of said McLean county to be used by the electors desiring to vote on said proposition, and said ballot also contained two other county division propositions, as shown on said ballot, which had been and were also submitted to the electors at said election.

## III.

"That no notice of the election upon said question of changing the boundaries of said county, as aforesaid, was given to the people of said county in the manner or form required by law, or at all, save and except that a statement that such proposition would be submitted to the voters of said county at the November 1908 election was published in three of the official newspapers of said county, once in each week during the two weeks next preceding the election, which statement was so published by including the same in and as a part of the notice of the primary election nominations of candidates to be voted for at said general election. That said notice was wholly insufficient, and, although there were at said election 3,600 electors who voted at said election in said county, there were cast less than 1,900 votes pro and con upon said proposition to create the said county of Stevenson. And plaintiff alleges that there was not a full or fair expression of the will of the voters upon said proposition.

## IV.

"That the understanding and opinion prevailed generally through-

out the county of McLean amongst the voters who knew of and were interested in said propositions to divide the county at said election, that, in order to adopt such proposition, the same would have to receive a majority of all the votes cast by electors who exercised their right to vote at said general election, and that an omission to vote on such proposition was equivalent to a vote against the same; and misleading and erroneous literature was circulated among the voters, which incorrectly stated the boundaries of the proposed new counties, and also set forth and stated that a proposition to divide the county could not be adopted unless it received the affirmative vote of a majority of the electors who voted at the general election; and a large portion, to wit, at least 30 per cent of the electors who voted at said general election, were misled and misinformed with respect to the manner of voting upon said proposition, and particularly were misinformed and misled as to the effect of failing to vote in the negative thereon, and, by reason thereof, at least 30 per cent of the electors of said county who voted at said election were induced to fail to vote in the negative on said Stevenson county proposition, who intended to do so, and in good faith believed they had done so.

## V.

"That the aggregate number of electors in said McLean county who voted the county division ballots was more than 2,800, and nearly three thousand, but of this number only 1,008 appear upon the returns to have voted in favor of the creation of Stevenson county, and all voted against the same, as appears from the face of the returns.

## VI.

"That all the precincts of said McLean county did not make any returns to the county canvassing board of the vote upon said division propositions, or any of them. That said precincts so failing to make any returns of said vote were the precincts of Butte, Douglas, Roseglen, Whittaker, Shell Creek, and Turtle Lake, and the aggregate number of electors who voted in said precincts above named at said general election was 384, of whom, as plaintiff is informed and believes, more than 150 voted the county division ballot; but plaintiff has no information as to the number of votes for and against said respective proposition. That the county canvassing board abstracted and counted the votes and certified to the returns to the extent of the precincts which made such returns, but did not send for, or cause to be

procured, the returns from the precincts above named, which omitted to send in the returns, and in that way announced and declared upon such incomplete canvass that there were 1,006 votes for Stevenson county and 811 against the same.

## VII.

"That said county canvassing board counted and included in said 1,006 affirmative votes for Stevenson county at least 200 votes which were null and void, in this, that each of the 200 voters whose votes were by the precinct election officers counted and returned as votes in favor of Stevenson county had on the same ballot voted in favor of the second proposition, which appears on 'Exhibit A,' as well as in favor of Stevenson county, although said second proposition was in conflict with the proposition to create Stevenson county, in this, that the territory proposed to be created into said respective new counties in said two propositions was in part the same. That said void and conflicting votes so counted and returned as aforesaid were cast in the following precincts to the number set opposite the name of each precinct: *viz.,*

| | | | |
|---|---|---|---|
| Lincoln | 9 | St. Mary | 20 |
| Curtis | 8 | Lamont | 5 |
| Malcolm | 4 | Goodrich | 30 |
| Garrison | 80 | Mercer | 10 |

And there were like conflicting votes counted in many other precincts of said county.

## VIII.

"That, on account of the foregoing facts and others, the then county auditor of McLean county refused to certify the result of said election on said Stevenson county to the secretary of state; he being of the opinion that said election was void, and that said proposition to create Stevenson county had not been carried. That, thereupon, on or about the 19th day of March, 1909, M. F. Minehan, who is one of the defendants in this action, commenced a proceeding in the district court in and for McLean county, North Dakota, wherein the state of North Dakota, on the relation of said Minehan, was plaintiff, and Ole B. Wing, as county auditor of McLean county, was defendant, in which he alleged in substance that the proposition to create Stevenson county had been duly submitted to the electors of McLean county at said gen-

eral election, and had been adopted, and sought to obtain from the said court in said proceeding a peremptory writ of mandamus, compelling said county auditor to certify the result of said election to the secretary of state, to the end that said county of Stevenson might be organized. That said defendant in said proceeding thereupon made answer therein setting forth and alleging all the facts hereinbefore set forth and alleged, and other facts, and asserted and contended that said election was void, and that said proposition to create the county of Stevenson had not been adopted, and that he, said defendant, ought not to certify the result of said election to the secretary of state, and prayed that the court dismiss said proceeding on the merits, and hold and adjudge that said election was void, and that said proposition to create Stevenson county had not been adopted. That thereupon such proceedings were had, that the district court in said proceeding struck out all said defensive matter from said answer, and ordered and entered judgment awarding a peremptory writ of mandamus, commanding said Ole B. Wing, as county auditor, to certify the result of said election to the secretary of state. That thereupon an appeal was duly taken by the said defendant to the supreme court of the state of North Dakota from said order and judgment of the district court, and such proceedings were thereupon had on said appeal that the supreme court held and decided and ordered that the order and judgment of the district court be reversed and vacated, and that the defensive matter set forth in said defendant's answer, and which is set forth in this complaint in substance and effect as set forth in said answer, constituted a complete defense in said mandamus proceeding, and would, if proved, establish the invalidity of said election. That said decision and order of the supreme court was thereupon remanded and transmitted to the district court on or about the 8th day of February, 1910, and said decision of the supreme court, and the mandate thereof, ordered and directed that the district court proceed to the trial of said mandamus proceeding. That said mandamus proceeding, ever since that time, has been and is still pending and undetermined in the district court, and, although duly noticed for trial, has not yet been heard and determined.

### IX.

"That during the pendency of said mandamus proceeding, the term of office of Ole B. Wing as county auditor of McLean county expired, and thereupon Paul S. Meyer, who was the successor in office of said

Ole B. Wing, was duly substituted for said Ole B. Wing as defendant in said proceeding.

## X.

"That although said Ole B. Wing, and subsequently Paul S. Meyer, as such successive county auditor, were the nominal defendants in said mandamus proceedings, in truth and in fact the real defendant was McLean county and sundry and numerous citizens and taxpayers of said McLean county, who, in the name of said county auditor, maintained and prosecuted the defense of said proceedings for the purpose of obtaining the relief sought by the answer therein, to the effect that said pretended election for the organization of Stevenson county be held null and void.

## XI.

"That, notwithstanding all the foregoing facts, the said Paul S. Meyer, as county auditor of McLean county, did, on or about the 11th day of February, 1911, wrongfully and unlawfully, of his own volition, in disregard of the pendency of said mandamus proceeding, and in contempt of the court, surreptitiously execute a certificate, as county auditor of McLean county, wherein he falsely certified to the secretary of state in effect that the proposition to create the county of Stevenson had been duly submitted to the electors of McLean county at the November, 1908, election, and had been duly adopted by a majority vote, and thereupon the like fact was certified by the secretary of state to the governor thereof, and the governor thereupon named the defendants Alexander Miller, Fritz Giffey, and Ed. Hanlon to be the county commissioners for the said pretended county of Stevenson.

## XII.

"That thereupon said three pretended commissioners pretended to qualify as such, and have or are about to name and appoint M. F. Minehan as county auditor of said pretended county, J. I. Behles as county treasurer thereof, F. E. Wright as state's attorney thereof, and Herbert F. O'Hare as county judge. That plaintiff is informed and believes that said defendants are now claiming and asserting that said county of Stevenson has been duly created and organized, and that they are the officers thereof, holding the respective offices above named, for which they claim to have been appointed as above set forth, and that they intend to and will, unless enjoined from so doing, proceed to assert and execute their pretended power and jurisdiction as

such officers of said pretended county of Stevenson, and intend to and will, unless restrained from so doing, effect a complete organization of said pretended county of Stevenson, and proceed to exercise all the powers and functions of a duly organized county of the state over and through all that territory within the county of McLean, comprised within the boundaries proposed for said county of Stevenson, as set forth in 'Exhibit A,' and intend to and will prevent or attempt to prevent the county of McLean and its several officers and tribunals from exercising their appropriate powers and duties in said territory, and intend to and will levy or attempt to levy taxes upon the inhabitants and property within said territory, which they claim constitutes the county of Stevenson, and intend to and will contract or attempt to contract obligations and indebtedness for and in the name of said pretended county of Stevenson, and hinder and prevent the county of McLean and its officers from exercising and enforcing their jurisdiction and the laws of the state within said territory. That unless the unlawful, collusive, and contemptuous proceedings of said defendants aforesaid are forthwith enjoined and restrained, the public business throughout the county of McLean and in the territory of the pretended Stevenson county will be seriously and irretrievably disturbed and interfered with, to the great detriment of the peace and good order of the state at large and of the inhabitants of McLean county, and a great multiplicity of suits will result, and irreparable mischief.

## XIII.

"That each and all of the said defendants, long before undertaking the aforesaid collusive proceedings, well knew all the facts here set forth.

## XIV.

"That an application for the relief herein prayed for was made to the district court of the sixth judicial district on this day, and the facts herein alleged were duly presented to it, but said court denied said application and declined to entertain jurisdiction thereof. And forasmuch as the plaintiff has no other speedy and adequate remedy in the premises, and the rights and sovereignty of the state of North Dakota are being impeded, infringed, and jeopardized, and the peace and good order of the inhabitants thereof, and of the inhabitants of

McLean county, are greatly endangered, disturbed, and put in con-
fusion, your relator respectfully prays, etc."

Petitioner's contention, briefly stated, is that the certificate issued
and transmitted by the county auditor of McLean county to the secre-
tary of state was a nullity, for the reason that the facts thus certified
to were in litigation and undetermined in the mandamus proceeding,
in which proceeding such auditor was and is a mere nominal party;
McLean county and its citizens who are opposed to the organization of
such new county being the real parties in interest. Hence, such nominal
party was powerless to take any action inimical to the rights of such
real parties in interest. In other words they invoke the doctrine an-
nounced by this court in Schouweiler v. Allen, 17 N. D. 510, 117 N.
W. 866. It is, in effect, contended that the act of such auditor in is-
suing such certificate was tantamount to a revocation of his original
decision, and an assumption on his part of the right to supplant the
jurisdiction of the district court by deciding the very question in liti-
gation in that court, and that a mere nominal party has no such power.
We think petitioner's contention in this respect is sound and unanswer-
able. Were it otherwise, a mere nominal party would have the power
to ignore at will the rights of the real parties in interest by usurping
the jurisdiction of the tribunal to whom the issues in controversy have
been submitted for decision, and in effect end the litigation at his mere
whim or caprice. Such is clearly not the law, as we have expressly de-
cided in the Schouweiler Case.

In determining the question of the sufficiency of the petition to afford
the relief prayed for, we shall therefore assume that the certificate of
the county auditor to the secretary of state was issued wholly without
authority of law, in view of the pending litigation in the mandamus
proceeding, and is consequently a nullity. In the light of this con-
clusion, do the facts alleged in the petition warrant this court in is-
suing its prerogative writ of injunction for the purpose of preserving
*in statu quo* the rights of all parties concerned until the determination
of the proceedings in the mandamus action?

Pursuant to such wrongful and illegal certificate, regular on its face,
the governor, pursuant to law, appointed three commissioners for such
new county, who have assumed to qualify and have taken the prelimi-
nary steps requisite to the organization of such new county, and have
appointed, or are about to appoint, a full set of officers, and such com-

missioners and other officers are assuming, in behalf of such county, to exercise jurisdiction over the territory embraced within its limits. We are therefore confronted with the serious situation of a conflict between two counties (one a *de jure,* and the other a *de facto,* organization) and their officers in the exercise of jurisdiction over the same territory. It goes without saying that, unless the relief prayed for is granted, grave complications will inevitably arise, resulting in a chaotic situation in governmental affairs in that portion of the state, necessarily resulting in a multiplicity of suits, and manifestly operating to directly affect the state at large in the exercise of its sovereignty, franchises, and prerogatives. That such a condition of affairs presents a proper case for the issuance by this court of its writ of injunction would seem clear. See Ewing v. Thompson, 43 Pa. 372; Kerr v. Trego, 47 Pa. 292; Pittsburg's Appeal, 79 Pa. 317.

In the light of the facts presented in the petition, we know of no other speedy or adequate remedy afforded petitioners for preventing the confusion and complications which will inevitably result on account of the conflict of authority between these parties. Until the validity of the election is regularly and finally determined by the district court in the pending mandamus proceeding, the public interests demand that the *status quo* should be maintained. The question of the legal right to organize the proposed new county of Stevenson is directly involved in such pending litigation, and until such question is judicially settled, the courts should not permit defendants to entangle public business, and thereby jeopardize the rights both of the public and of individual citizens. Parsons v. Durand, 150 Ind. 203, 49 N. E. 1047; Bradley v. Powell County, 2 Humph. 428, 37 Am. Dec. 563; State ex rel. Forsythe v. Seventh Judicial Dist. Judge, 42 La. Ann. 1104, 8 So. 305; Segars v. Parrott, — La. —, 30 S. E. 353, 54 S. C. 1, 31 S. E. 677, 865; East St. Louis v. New Brighton, 34 Ill. App. 494; Bridgenor v. Rodgers, 1 Coldw. 259; Maury County v. Lewis County, 1 Swan, 235. That this court may properly intercede in such a case by the issuance of its prerogative writ is well settled. State ex rel. Frich v. Stark County, 14 N. D. 368, 103 N. W. 913; State ex rel. McCue v. Blaisdell, 18 N. D. 31, 119 N. W. 360; State ex rel. Byrne v. Wilcox, 11 N. D. 329, 91 N. W. 955; State ex rel. Moore v. Archibald, 5 N. D. 359, 66 N. W. 234; State v. Nelson County, 1 N. D. 88, 8 L.R.A. 283, 26 Am. St. Rep. 609, 45 N. W. 33.

The learned counsel for defendants urge, with apparent confidence in the correctness of their position, that plaintiff is pursuing the wrong remedy. They, in effect, contend that while injunction is available to restrain contemplated proceedings to organize a county, that such remedy cannot be resorted to after the organization of such new county has been perfected. Among other things they say: "In the case at bar, it is true the writ is to test the legality of the organization of a county; if granted, the purpose served by the writ will be to dissolve the organization of the county. . . . The attorney general asks this court to investigate the facts . . . and from them declare that the organization of the county is illegal." We do not thus construe the petition, and it is apparent that defendants' counsel are laboring under a misapprehension regarding the object sought to be accomplished by petitioner. As we understand the attorney general's contention, he does not ask this court to determine the validity of the election at which the proposition for the organization of such new county was submitted to the electors, but he merely asks the intervention of this court to maintain *in statu quo* the rights of McLean county and its officers until the validity of such election is regularly determined in the mandamus proceedings, in order to obviate serious complications which would otherwise inevitably result from the threatened exercise by the alleged new county and its officers of jurisdiction in conflict with McLean county and its officers over the territory in question. Manifestly, the remedy by quo warranto is ineffectual for such purpose, as is held by some of the authorities above cited. The case of Ford v. Farmer, 9 Humph. 152, is urged by defendants' counsel as an authority directly supporting their contention. We do not so construe the opinion in that case, nor does the Tennessee court so construe it, as apparent by the cases of Gotcher v. Burrows, 9 Humph. 585; Maury County v. Lewis County, Swan, 235; and Bridgenor v. Rodgers, 1 Coldw. 259, subsequently decided by that court. The mere fact that the new county has a *de facto* existence is not an insuperable obstacle to the granting of the relief prayed for by petitioner under the facts presented in the petition. By this proceeding, as before stated, we are not asked to determine the validity of the alleged organization of Stevenson county. That question is directly involved and will be adjudicated in the pending manda-

mus case. In the interest of the public and all concerned, such proceeding should be speedily tried and determined by the district court.

Counsel for defendants have called our attention to a point decided by us on the appeal in the mandamus case relative to the validity of the publication of notice that such county division proposition would be submitted to a vote at the general election of 1908. We there held that a four weeks' publication was requisite. In this we, through inadvertence, no doubt committed error. The case was argued and submitted by counsel on both sides on the assumption that a four weeks' publication was requisite, and as a consequence our attention was not called to §§ 630 and 634 Rev. Code, 1905, which no doubt control. We embrace this, our first opportunity, to correct such mistake in order that the public generally may not be misled, and also for the guidance of the district court on the new trial of such case. The fact that a four weeks' publication of notice was not required is not necessarily conclusive or controlling as to the merits in the mandamus proceedings.

Our conclusion is that the motion to quash the petition should be overruled, and defendants will be given ten days in which to answer, if they so desire.

Judge CHARLES A. POLLOCK, of the Third Judicial District, participating as special judge by request.